JS 44 (Rev. 1/2013)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
UNITED STATES OF AMERICA

**DEFENDANTS**
Presidential Who's Who
d/b/a Presidential Who's Who, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Nassau
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       *(U.S. Government Not a Party)*

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **PRISONER PETITIONS** | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 463 Alien Detainee | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 510 Motions to Vacate Sentence | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | | |
| | ☐ 448 Education | **Other:** | **IMMIGRATION** | |
| | | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original
      Proceeding

☐ 2 Removed from
      State Court

☐ 3 Remanded from
      Appellate Court

☐ 4 Reinstated or
      Reopened

☐ 5 Transferred from
      Another District
      *(specify)*

☐ 6 Multidistrict
      Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 503(b)(5) and 504 (a)
Brief description of cause:
Enforcement of FCC monetary FORFEITURE ORDER

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  9/12/2014

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, Mary M. Dickman _____ , counsel for United States _____ , do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☒      monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐      the complaint seeks injunctive relief,

☐      the matter is otherwise ineligible for the following reason

### DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

### RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

### NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.)     Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County: NO _____

2.)     If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? YES _____

b) Did the events of omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? _____

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? _____
     (Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

### BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.
    ☒   Yes               ☐   No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?
    ☐   Yes   (If yes, please explain)      ☒   No

I certify the accuracy of all information provided above.

Signature: _____

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| Presidential Who's Who | ) |
| d/b/a Presidential Who's Who, Inc | ) |
| _____ | ) |
| *Defendant* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Presidential Who's Who d/b/a Presidential Who's Who, Inc
134 Rockaway Avenue, Valley Stream, New York 11580
17 W. Merrick Road, Suite B, Valley Stream, New York 11580
78-07 75th Street, Glendale, New York 11385
2927 Queens Plaza N, Long Island City, New York, 11101

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                    *Server's signature*

                                                    _____
                                                    *Printed name and title*

                                                    _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - )
UNITED STATES OF AMERICA,                          )
                                                   )
                        Plaintiff,                 )        COMPLAINT
                                                   )
v.                                                 )        Civil Action No. _____
                                                   )
PRESIDENTIAL WHO'S WHO, d/b/a                      )
 PRESIDENTIAL WHO'S WHO, INC.,                     )
                                                   )
                        Defendant.                 )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - )


        Plaintiff UNITED STATES OF AMERICA, by its attorney, LORETTA E.

LYNCH, United States Attorney for the Eastern District of New York, Mary M. Dickman,

Assistant U.S. Attorney, of counsel, brings this complaint and alleges on information and

belief as follows:


                        JURISDICTION AND VENUE

        1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331,

1345, and 1355 and 47 U.S.C. § 504(a).

        2.      The United States ("Plaintiff") brings this action on behalf of its agency, the

Federal Communications Commission ("FCC"), pursuant to the Communications Act of

1934, as amended (the "Communications Act"), 47 U.S.C. § 504(a), to enforce a monetary

forfeiture penalty.

3.     The FCC is an independent federal regulatory agency created by Congress to regulate intrastate, interstate, and foreign radio communications pursuant to the Communications Act, 47 U.S.C. § 151 et seq.

4.     Defendant Presidential Who's Who d/b/a Presidential Who's Who, Inc. ("Defendant"),  is a New York corporation that, on information and belief, maintains business operations at the following addresses:  (1) 134 Rockaway Avenue, Valley Stream, New York 11580; (2) 17 W. Merrick Road, Suite B, Valley Stream, New York 11580; (3) 78-07 75th Street, Glendale, New York 11385; and (4) 2927 Queens Plaza N, Long Island City, New York 11101.

5.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1355(b), 1391(b), and 1395(a) and 47 U.S.C. § 504(a), because Defendant maintains business operations in Valley Stream, Glendale and Long Island City, New York, all of which are within the Eastern District of New York.


STATUTORY AND REGULATORY BACKGROUND

6.     Section 227 of the Communication Act, 47 U.S.C. § 227, generally prohibits the use of telephone facsimile machines to send unsolicited advertisements; Section 227(b)(1)(C) of the Communications Act, 47 U.S.C. § 227(b)(1)(C), makes it unlawful for any person to use "a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." See 47 C.F.R. § 64.1200(a)(3).

7.     For the purpose of Section 227 of the Communications Act, an unsolicited advertisement is defined as "any material advertising the commercial availability or quality

2

of any property, goods, or services which is transmitted to any person without that person's express invitation or permission."  47 U.S.C. § 227(a)(4).

8.     The statute provides an exception to the general prohibition against the use of telephone facsimile machines to send unsolicited advertisements when such transmissions are made in the context of an "established business relationship" between the sender and the recipient.  47 U.S.C. § 227(b)(1)(C); see 47 C.F.R. § 64.1200(a)(3).

9.     Section 64.1200(f)(5) defines an "established business relationship" as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party."  47 C.F.R. § 64.1200(f)(5).

10.     Under the established business relationship exception, in addition to having an established business relationship with the recipient, the sender must transmit the facsimile to a facsimile telephone number that was obtained only through a "voluntary communication . . . by the recipient directly to the sender within the context of an established business relationship" or through a "directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution." 47 C.F.R. § 64.1200(a)(3)(ii); see also 47 U.S.C. § 227(b)(1)(C)(ii).

11.     "The fact that a fax number is made available in a directory, advertisement or website does not alone entitle a person to send a facsimile advertisement to that number." Junk Fax Prevention Act Report & Order & Third Order on Reconsideration, 21 FCC Rcd 3787 at 3797 (2006).

3

12.     Pursuant to section 503(b) of the Communications Act, 47 U.S.C. § 503(b), any person whom the FCC determines to have willfully or repeatedly failed to comply with the provisions of Chapter 5, Title 47 of the United States Code or any rule, regulation or order issued by the FCC (including Section 64.1200) shall be liable to the United States for a forfeiture penalty.

13.     Section 503(b)(5) of the Act, 47 U.S.C. § 503(b)(5), authorizes the FCC to assess a forfeiture penalty against any person who is not a common carrier so long as such person is (A) first issued a citation of the violation charged; (B) given a reasonable opportunity for a personal interview with an FCC official; and (C) subsequently engages in conduct of the type described in the citation.

14.     Section 312(f)(1) of the Communications Act, which applies to violations for which forfeitures are assessed under section 503(b), provides that "[t]he term 'willful,' when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this Act or any rule or regulation of the Commission authorized by this Act."  47 U.S.C. § 312(f)(1).

15.     Section 312(f)(2) of the Communications Act, which also applies to violations for which forfeitures are assessed under section 503(b), provides that "[t]he term 'repeated,' when used with reference to the commission or omission of any act, means the commission or omission of such act more than once, or, if such commission or omission is continuous, for more than one day." 47 U.S.C. § 312(f)(2).

## THE INITIAL VIOLATION AND CITATION

16.    On June 18, 2008, in response to at least one consumer complaint alleging that Defendant, a business that advertises entry in and sale of professional directories, publications and plaques, had transmitted an unsolicited advertisement to the complainant's facsimile machine, the FCC Enforcement Bureau issued a citation to Defendant for violation of section 227 of the Act by using a telephone facsimile machine, computer, or other device to send an unsolicited advertisement.  See Citation from Kurt A. Schroeder, Deputy Chief, Telecommunications Consumers Division, Enforcement Bureau, File No. EB-08-TC-2507 to Defendant, (June 18, 2008) ("Citation"), attached hereto as Exhibit A.

17.    The Citation, which was sent to Defendant by Certified Mail, return receipt requested, informed Defendant that its transmission had violated Section 227 and warned Defendant that subsequent violations could result in the imposition of monetary forfeitures of up to $11,000 per violation.  Id.

18.    The Citation included a copy of the consumer complaint underlying the Citation.  Id.

19.    The Citation informed Defendant that within thirty (30) days of the date of the Citation, it could either request an interview with FCC staff or submit a written statement responding to the Citation.  Id.

20.    Frank Ciaccio, President and Chief Executive Officer of Defendant, requested an interview with the FCC.  See Notice of Apparent Liability for Forfeiture ("First NAL"), issued September 13, 2010, attached hereto as Exhibit B, at p. 2.

21.    During that interview, on July 11, 2008, Mr. Ciaccio claimed that the fax on which the citation was based was not an advertisement.  Id., at pp. 2 - 3.

<u>FIRST NOTICE OF APPARENT LIABILITY</u>

22.    From September 2009 through April 2010, the FCC received complaints from sixty-nine (69) different individuals alleging that Defendant collectively faxed to them at least seventy-three (73) unsolicited advertisements.   <u>Id.</u>

23.    Defendant did not have an established business relationship with any of these complainants, nor did any complainant give Defendant permission to send the facsimile transmissions.  <u>Id.</u>

24.    On or about September 13, 2010, the FCC Enforcement Bureau issued a Notice of Apparent Liability for Forfeiture ("First NAL") to Defendant in the amount of $345,000.00 for the apparent willful or repeated violations of Section 227 of the Communications Act, 47 U.S.C. § 227, for transmitting at least 73 unsolicited advertisements to the telephone facsimile machines of at least 69 persons subsequent to Defendant's receipt of the Citation for such practices. <u>Id.</u>

25.    The FCC sent a copy of the First NAL to Defendant, by Certified Mail, return receipt requested, and by First Class Mail.  <u>Id.</u> at p. 6.

26.    The First NAL ordered Defendant to pay the full amount of the proposed forfeiture, or to file a written statement seeking reduction or cancellation of the proposed forfeiture, within thirty (30) days of the date of the First NAL.  <u>Id.</u> at pp. 1, 5, 6.

27.    With respect to the First NAL, the FCC rejected the assertions that Mr. Ciaccio had made in the July 2008 interview that the faxes were not advertisements and found that the faxes were a pretext to advertise a commercial product of service --  the "Presidential Who's Who" publication and associated products.  <u>Id.</u> at pp. 2 - 4.

28.    By letter dated November 10, 2010, Defendant responded and disputed the FCC's findings.  See Letter from Defendant to FCC dated November 10, 2010, attached hereto as Exhibit C.

29.    On or about January 26, 2011, Defendant responded to the First NAL and provided a list of websites from which Defendant obtained the fax numbers that received the unsolicited advertisements.  Letter from Defendant, signed by Frank Ciaccio as President and Chief Executive Officer, to Rosemary Cabral, an attorney in the Enforcement Bureau of the FCC's Telecommunications Consumers Division, dated January 26, 2011, attached hereto as Exhibit D.

<u>SECOND NOTICE OF APPARENT LIABILITY</u>

30.    From June 2010 through October 2010, the FCC received complaints from thirty (30) additional individuals alleging that Defendant collectively faxed to them, during that time, at least thirty-one (31) unsolicited advertisements.  See Notice of Apparent Liability for Forfeiture ("Second NAL"), issued June 13, 2011, attached hereto as Exhibit E.

31.    Defendant did not have an established business relationship with any of these complainants, nor did any complainant give Defendant permission to send the facsimile transmissions.  Id. at pp. 2 - 4.

32.    On or about June 13, 2011, the FCC issued another Notice of Apparent Liability for Forfeiture ("Second NAL") to Defendant in the amount of $295,000.00 for the apparent willful or repeated violations of section 227 of the Communications Act, 47 U.S.C. § 227, for transmitting at least 31 unsolicited advertisements to the telephone facsimile machines of at least 30 persons subsequent to Defendant's receipt of the Citation for such practices.  Id.

33.   The FCC sent a copy of the Second NAL to Defendant, by Certified Mail, return receipt requested, and by First Class Mail.  <u>Id.</u>, at p. 8.

34.   The Second NAL ordered Defendant to pay the full amount of the proposed forfeiture, or to file a written statement seeking reduction or cancellation of the proposed forfeiture, within thirty (30) days of the date of the Second NAL.  <u>Id.</u> at pp. 7 - 8.

35.   In response to the Second NAL, on August 12, 2011, Mr. Ciaccio, Defendant's President and Chief Executive Officer, requested a meeting via teleconference with FCC staff.  <u>See</u> Forfeiture Order ("Order") issued March 28, 2014, attached as Exhibit F, at p. 3.

36.   At the requested meeting, which took place on August 17, 2011, Mr. Ciaccio acknowledged that the Defendant sent the faxes, but argued that the faxes were legal because, in his view, the FCC had not warned him that the faxes violated the Communications Act and/or the FCC's rules.  <u>Id.</u>

37.   Additionally, Mr. Ciaccio contended that the Defendant was unable to pay the proposed forfeiture amounts, and subsequently submitted some tax documents purporting to show Defendant's financial condition.  <u>Id.</u>; <u>see</u> Letter from Frank Ciaccio to Rosemary Cabral, an attorney in the Enforcement Bureau of the FCC's Telecommunications Consumers Division, dated October 24, 2011, attached as Exhibit G.

<u>FORFEITURE ORDER</u>

38.   On or about March 28, 2014, the FCC issued a Forfeiture Order in the amount of $640,000.00 against Defendant for willful and repeated violations of section 227 of the Communications Act, and related FCC rules or orders by delivering one hundred (100)

unsolicited advertisements to the telephone facsimile machines of different consumers with whom it did not have an established business relationship.  See Exhibit F.

39.    The FCC found that the faxes serve as part of an overall marketing campaign to sell property, goods, or services; thus, for purposes of the junk fax rules, they are unsolicited facsimile advertisements.  Id. at p. 4.

40.    The FCC also found that Defendant had ample notice that its faxes constituted unsolicited facsimile advertisements.  Id. at pp. 4 - 5.

41.    The FCC declined to reduce the proposed forfeiture and found that the financial information submitted by Defendant did not sufficiently support its inability to pay the full amount of the forfeiture.  Id. at pp. 5 - 6.

42.    Although the FCC sent a copy of the Forfeiture Order to Defendant by Certified Mail, return receipt requested, and by First Class Mail, the mailings were returned to the FCC, marked "Return to Sender; Unable to Forward."  See E-mail from Steve Maguire to FCC Attorney Cabral, sent June 3, 2014, to William Davenport, included in e-mail chain and other documents relating to service of Forfeiture Order, attached as Exhibit H.

43.    Thereafter, on or about July 15, 2014, the Forfeiture Order was served by hand upon Defendant, through hand delivery to its President and Chief Executive Officer, Mr. Ciaccio.  See E-mail from Steve Maguire to FCC Attorney Cabral, sent July 16, 2014, in which Forfeiture Order is mistakenly referred to as "NAL," included in Exhibit H.

44.    The Forfeiture Order provided that if Defendant did not pay the forfeiture within thirty days, the case could be referred to the Department of Justice for enforcement. See Exhibit F.

45.    Defendant has not paid the Forfeiture.

9

46.     Accordingly, as of July 29, 2014, Defendant is obligated to Plaintiff in the amount of $640,000.  <u>See</u> Certificate of Forfeiture signed by FCC Deputy Associate General Counsel Susan L. Launer, dated July 29, 2014, attached hereto as Exhibit I.

<u>CLAIM FOR RELIEF</u>

47.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 46 above.

48.     Defendant willfully and repeatedly violated section 227 of the Communications Act, 47 U.S.C. § 227, and related rules and orders by delivering more than one hundred (100) unsolicited advertisements to the telephone facsimile machines of individuals after having been issued a Citation apprising them that Defendant had violated Section 227 of the Communications Act for the same type of conduct.

49.     Pursuant to 47 U.S.C. § 503(b),  the FCC entered a Forfeiture Order on or about March 28, 2014, in which it asserted a total forfeiture penalty in the amount of $640,000.00 against Defendant for its violations of 47 U.S.C. § 227, representing the $345,000.00 and $295,000.00 forfeitures proposed on September 2010, and June 2011, respectively.

50.     By reason of the foregoing, Defendant is liable to the United States for a forfeiture penalty pursuant to 47 U.S.C. § 503(b), section 1.80 of the Commission's Rules ("Rules"), 47 C.F.R. § 1.80, and the Commission's <u>Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines</u>, 12 FCC Rcd 17087 (1997), <u>recon.</u> <u>denied</u>, 15 FCC Rcd 303 (1999).

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a.      Judgment in the amount of $640,000.00;

b.      Interest from the date of judgment at the legal rate in effect on the date of

judgment, pursuant to 28 U.S.C. § 1961.

c.      in the amount of $350.00 for filing fees, pursuant to 28 U.S.C. §§ 1914(a) and

2412;

d.      Costs and disbursements incurred by Plaintiff in this action; and

e.      Such other and further relief as this Court may deem just and equitable.


Dated:      Brooklyn, New York
            September 12, 2014


                                    LORETTA E. LYNCH
                                    United States Attorney
                                    Eastern District of New York
                                    Attorney for Plaintiff
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201


                        By:     ___s/_____
                                    MARY M. DICKMAN
                                    Assistant U.S. Attorney
                                    (718) 254-6022


11

# EXHIBIT A

Federal Communications Commission



### FEDERAL COMMUNICATIONS COMMISSION
### WASHINGTON, D.C. 20554

June 18, 2008

**VIA CERTIFIED AND REGULAR MAIL**
**RETURN RECEIPT REQUESTED**

Presidential Who's Who
2927 Queens Plaza
Long Island City, NY 11101

RE: EB-08-TC-2507

Dear Correspondent:

This is an official **CITATION**, issued pursuant to section 503(b)(5) of the Communications Act of 1934, as amended (the Act), 47 U.S.C. § 503(b)(5), for violations of the Act and the Federal Communications Commission's rules that govern telephone solicitations and unsolicited advertisements.[1]  As explained below, future violations of the Act or Commission's rules in this regard may subject you and your company to monetary forfeitures.

It has come to our attention that your company, acting under your direction, apparently sent one or more unsolicited advertisements to telephone facsimile machines in violation of Section 227(b)(1)(C) of the Communications Act, as described in the attached complaint(s).[2] Section 227(b)(1)(C) makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use a telephone facsimile machine,

---

[1] 47 U.S.C. § 227; 47 C.F.R. § 64.1200.  A copy of these provisions is enclosed for your convenience.  Section 227 was added to the Communications Act by the Telephone Consumer Protection Act of 1991 and is most commonly known as the TCPA.  The TCPA and the Commission's parallel rules restrict a variety of practices that are associated with telephone solicitation and use of the telephone network to deliver unsolicited advertisements, including fax advertising. 47 U.S.C. § 64.1200(a)(3); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 – Junk Fax Protection Act of 2005*, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787 (2006) (*2006 TCPA Report and Order*).

[2] We have attached one complaint at issue in this citation.  The complaint addresses a facsimile advertisement that contains the telephone number 718-707-6638, which your business utilized during the time period at issue.

### Federal Communications Commission

computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."[3] As relevant here, an "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission."[4] Mere distribution or publication of a fax number does not establish consent to receive advertisements by fax.[5] Fax advertisements may be sent to recipients with whom the sender has an established business relationship, as long as the fax number was provided voluntarily by the recipient.[6] An established business relationship is defined as a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, based on a purchase, inquiry, application or transaction by that subscriber regarding products or services offered by such person or entity. This relationship must not have been previously terminated by either party.[7] A fax advertisement may be sent to a recipient with whom the sender has an established business relationship only if the sender also:[8]

    (i) obtains the fax number directly from the recipient;[9] or

---

[3] 47 U.S.C. § 227(b)(1)(C); *see also* 47 C.F.R. § 64.1200(a)(3) (providing that no person or entity may . . . use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine). Both the TCPA and the Commission's rules define "telephone facsimile machine" as "equipment which has the capacity to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3); 47 C.F.R. § 64.1200(f)(11). The Commission has stated that "[t]he TCPA's definition of 'telephone facsimile machine' broadly applies to any equipment that has the capacity to send or receive text or images.". Thus, "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes. . . [although] the prohibition does not extend to facsimile messages sent as email over the Internet." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd 14014, 14131-32 (2003) (*2003 TCPA Report and Order*).

[4] 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(13) (defining "unsolicited advertisement" to specify that prior express invitation or permission may be "in writing or otherwise").

[5] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12408-09 (1995) (*1995 TCPA Reconsideration Order*); *see also 2003 TCPA Report and Order*, 18 FCC Rcd at 14128 (concluding that mere publication of a fax number in a trade publication or directory does not demonstrate consent to receive fax advertising).

[6] 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. 64.1200(a)(3)(ii).

[7] 47 U.S.C. § 227(a)(2); 47 C.F.R. 64.1200(f)(5); *see also 2006 TCPA Report and Order*, 21 FCC Rcd at 3797-3799. An inquiry about a store location or merely visiting a company website does not create an established business relationship; an inquiry must seek information about the products or services offered by the company. Once established, nonetheless, a business relationship will permit an entity to send facsimile advertisements until the recipient "terminates" the relationship by making a request not to receive future faxes. *2006 TCPA Report and Order*, 21 FCC Rcd at 3798.

[8] If a valid EBR existed between the fax sender and recipient prior to July 9, 2005, and the sender also possessed the facsimile number prior to July 9, 2005, the sender may send the facsimile advertisements to that recipient without demonstrating how the number was obtained or verifying it was provided voluntarily by the recipient. 47 U.S.C. § 227(b)(1)(C)(iii); 47 C.F.R. § 64.1200 (a)(ii)(C); *see also 2006 TCPA Report and Order*, 21 FCC Rcd at 3796.

[9] 47 U.S.C. § 227(b)(1)(C)(ii)(I); 47 C.F.R. § 64.1200 (a)(ii)(A).

## Federal Communications Commission

(ii) obtains the fax number from the recipient's own directory, advertisement, or site on the Internet, unless the recipient has noted on such materials that it does not accept unsolicited advertisements at the fax number in question;[10] or

(iii) has taken reasonable steps to verify that the recipient agreed to make the number available for public distribution, if obtained from a directory or other source of information compiled by a third party.[11]

Finally, in the event of a complaint or dispute, the burden rests with the fax sender to demonstrate that it either obtained prior express permission to send the facsimile advertisement or satisfied all the criteria necessary to invoke the established business relationship exemption.[12]

**If, after receipt of this citation, you or your company violate the Communications Act or the Commission's rules in any manner described herein, the Commission may impose monetary forfeitures not to exceed $11,000 for each such violation or each day of a continuing violation.**

You may respond to this citation within thirty (30) days from the date of this letter either through (1) a personal interview at the Commission's Field Office nearest to your place of business, (2) a written statement, or (3) a teleconference interview with the Commission's Telecommunications Consumers Division in Washington, DC. Your response should specify the actions that you are taking to ensure that you do not violate the Commission's rules governing telephone solicitation and unsolicited advertisements, as described above.

**Please contact Delores Browder at (202) 418-2861 to arrange for an interview at the closest field office, if you wish to schedule a personal interview. You should schedule any interview to take place within thirty (30) days of the date of this letter. You should send any written statement within thirty (30) days of the date of this letter to:**

> Kurt A. Schroeder
> Deputy Chief
> Telecommunications Consumers Division
> Enforcement Bureau
> Federal Communications Commission
> 445-12th Street, S.W., Rm. 4-C222
> Washington, D.C. 20554

**Reference EB-08-TC-2507 when corresponding with the Commission.**

Reasonable accommodations for people with disabilities are available upon request. Include a description of the accommodation you will need including as much detail as you can.

---

[10] 47 U.S.C. § 227(b)(1)(C)(ii)(II); 47 C.F.R. § 64.1200 (a)(ii)(B).

[11] 47 U.S.C. § 227(b)(1)(C)(ii)(II); 47 C.F.R. § 64.1200 (a)(ii)(B); *see also 2006 TCPA Report and Order*, 21 FCC Rcd at 3795 ("[I]f the sender obtains the number from sources of information compiled by third parties—*e.g.*, membership directories, commercial databases, or internet listings—the sender must take reasonable steps to verify that the recipient consented to have the number listed, such as calling or emailing the recipient.").

[12] *2006 TCPA Report and Order*, 21 FCC Rcd at 3793-9, 3795, 3812.

**Federal Communications Commission**

Also include a way we can contact you if we need more information. Please allow at least 5 days advance notice; last minute requests will be accepted, but may be impossible to fill. Send an e-mail to fcc504@fcc.gov or call the Consumer & Governmental Affairs Bureau:

For sign language interpreters, CART, and other reasonable accommodations: 202-418-0530 (voice), 202-418-0432 (tty);

For accessible format materials (braille, large print, electronic files, and audio format): 202-418-0531 (voice), 202-418-7365 (tty).

Under the Privacy Act of 1974, 5 U.S.C. § 552(a)(e)(3), we are informing you that the Commission's staff will use all relevant material information before it, including information that you disclose in your interview or written statement, to determine what, if any, enforcement action is required to ensure your compliance with the Communications Act and the Commission's rules.

The knowing and willful making of any false statement, or the concealment of any material fact, in reply to this citation is punishable by fine or imprisonment under 18 U.S.C. § 1001.

Thank you in advance for your anticipated cooperation.

Sincerely,

Kurt A. Schroeder
Deputy Chief, Telecommunications Consumers Division
Enforcement Bureau
Federal Communications Commission

Enclosures

4

User Complaint Number: **07-T00057522**

## Form 1088A – Junk Fax Complaint
### * * ANSWER EACH QUESTION THAT APPLIES TO YOUR SPECIFIC COMPLAINT. **
**Background information is at the end of this section**

User Complaint Number: **07-T00057522**

**Consumer's Information:**

First Name: **Craig**     Last Name: **Nelson**

Company Name: **Ensign Books**
(Complete only if you are filing this complaint on behalf of a company or an organization.)

Street Address or Post Office Box Number: **6051 Falling Tree Lane**

City: **Rancho Cucamonga**     State: **CA**     Zip Code: **91737**

Email: **LDTrumpet@aol.com**

Telephone Number (Residential or Business): **(909) 948 - 1822**

1. Telephone/fax number where you received the fax:  **(909) 948 - 1822  (Residential)**

2. When did you receive the fax?  **Date: 2007-10-30 10:08:00.0**

3. Is the following information contained either on the <u>first page of the fax or in a margin at the top or bottom of each page</u>?  You may submit a copy of the fax.
   Date of transmission: **Yes**
   Name of sender:     **Yes**
   If Yes, Name:         **Presidential Who's Who**
   Telephone number of sender or number of sending machine: **No**
   If Yes,

4. Did the fax advertise the commercial availability or quality of any property, goods, or services? Yes

   What property, goods, or services did the fax promote? **Other**
   **Service:  inclusion in 2008 Edition of Presidential Who's Who  (assumedly available to purchase after publication**

5. List all information (e.g., addresses, e-mail, websites) provided on the fax to identify the fax sender.
   Phone: **(718) 707 - 6638**
   Business name(s): **Presidential Who's Who**
   Other information: **Mark Anthony McGuiness, Chief Operations Officer**
   No information available:

User Complaint Number: **07-T00057522**

### Form 1088A – Junk Fax Complaint
### * * ANSWER EACH QUESTION THAT APPLIES TO YOUR SPECIFIC COMPLAINT. **
**Background information is at the end of this section**

6. Did the fax include an "opt-out" notice (containing a telephone number, website, or e-mail address) that provides an opportunity to request that no future faxes be sent? **Yes** (If you answer No, skip to **question 7**.)
   opt-out telephone number: **(866) 255 - 1363**
   Website address to transmit a do-not-fax request:
   E-mail address to transmit a do-not-fax request:
   Is the opt-out notice on the first page of the fax advertisement?   **Yes**

7. Record any other faxes which contain identical information (except for date/time stamp) from this fax sender.

8. Have you or anyone else in your household or business:

   (a) Done any business with the fax advertiser or involving the advertised property, goods, or services (a purchase or other transaction)? **No** When?  Date

   (b) Made an inquiry or application to the fax advertiser involving the advertised property, goods, or services? **No**  When?  Date

   (c) If you answered YES to either (a) or (b):  Have you taken any of the following actions to make your fax number available to the sender?  (Check all that apply.)
   Provided it directly to the sender in connection with a purchase, other transaction, inquiry, or application?
   Placed it in your own directory, advertisement, or website?
   Voluntarily placed it in someone else's publicly-available directory, advertisement, or website?
   None of the above:

9. Have you or anyone else in your household or business given the fax advertiser or anyone associated with the advertised property, goods, or services permission to fax an advertisement to you? **No**

10. Have you or anyone else in your household or business asked the fax advertiser or anyone associated with the advertised property, goods, or services NOT to fax an advertisement to you? **No**

2 of 6

User Complaint Number: **07-T00057522**

## Form 1088A – Junk Fax Complaint
### * * ANSWER EACH QUESTION THAT APPLIES TO YOUR SPECIFIC COMPLAINT. **
**Background information is at the end of this section**

---

**10.** (Cont'd)   (Provide as much detail as possible.)
When?   Date

How did you make your request?
By telephone to:
By e-mail to:
By website request at:
Other (describe):

Describe any response from, or other contact with, the fax advertiser or telemarketer including any
difficulty in making your do-not-fax request, or any telemarketing faxes that you received from
this advertiser after making your do-not-fax request.

### Continue to the Attestation Page to Complete Your Complaint

---

#### BACKGROUND

---

It is unlawful to fax an advertisement to any recipient – residential or business – unless the recipient has
given the sender permission to fax or has an established business relationship with the sender. Under this
law, you have an "established business relationship" with the fax sender if you have made an inquiry,
application, purchase, or some other transaction with that individual or business. A fax advertisement
sent without an established business relationship or prior express permission is unlawful even if it
contains an "opt-out notice." Non-advertising faxes, however, are permitted.

An advertisement is "any material which advertises the commercial availability or quality of any
property, goods, or services." Materials that appear to be surveys or informational "newsletters" actually
may be advertisements.  For instance, a "survey" is actually an advertisement if it costs money to
participate or if the survey promotes property, goods, or services in addition to asking questions.

Likewise, so-called newsletters often are advertisements. Fax advertisements must contain on the first
page of the advertisement a clear and conspicuous opt-out notice that explains how to avoid receiving
future faxes.  Recipients must be provided a cost-free way to opt-out of receiving future fax
advertisements (by phone, Internet website, or e-mail) and the sender must honor such opt-out requests
within no more than 30 days.
The restrictions on fax advertisements apply regardless of whether the recipient's fax number is on the
National Do-Not-Call Registry.  The National Do-Not-Call Registry, which provides consumers an
opportunity to opt-out of most telemarketing calls to their homes, applies only to telephone solicitations –
in other words, advertising telephone calls – not faxes.  By contrast, the FCC's fax rules prohibit fax
advertisements unless an individual or business chooses to opt-in to receiving them by maintaining a
business relationship with the sender or giving prior express permission.

All faxes – including those that are not advertisements – must include the following information on either
the first page of the fax transmission or in a margin at the top or bottom of every page of the transmission:
the date and time the fax was sent, the name of the sender, and the telephone number of the sender or the sending
machine.

User Complaint Number: **07-T00057522**

## Form 1088A – Attestation

ATTEST TO THE ACCURACY OF YOUR COMPLAINT   Thank you for filing your complaint. **Your complaint will be most useful to us if you execute this sworn statement.** The FCC will make every effort to take enforcement action against any party who violated the FCC's rules.

Fill in the blanks below and then check the "EXECUTE" box, to declare under penalty of perjury that the information you have provided is, to the best of your knowledge, true and correct.

I declare under penalty of perjury that (1) I am over 18 years old, (2) I am authorized to make decisions regarding the telephone number listed below, and (3) the information I have provided today on this Federal Communications Commission form is, to the best of my knowledge, true and correct.

Name: **Craig Nelson**
Date: **Date: 2007-10-30 00:00:00.0**          EXECUTE:
**(909) 948 - 1822  948 1822**   (telephone number where you received the call(s) that is the subject of your complaint)

You may submit this form over the Internet at http://www.fcc.gov/cgb/complaints.html, by e-mail to fccinfo at fcc.gov, by fax to 1-866-418-0232, or by postal mail to:

> Federal Communications Commission
> Consumer & Governmental Affairs Bureau
> Consumer Complaints
> 445 12th Street, SW
> Washington, D.C. 20554.

In addition, you may submit your complaint over the telephone by calling 888-CALL-FCC. If you choose to submit your complaint over the telephone, an FCC customer service representative will fill out an electronic version of the form for you during your conversation. If you have any questions, feel free to contact the FCC at 888-CALL-FCC.

**FCC NOTICE REQUIRED BY THE PAPERWORK REDUCTION ACT AND THE PRIVACY ACT**

The Federal Communications Commission is authorized under the Communications Act of 1934, as amended, to collect the personal information that we request in this form. This form is used for complaints that involve (1) junk faxes, (2) telemarketing (including do-not-call violations), and (3) other related issues such as prerecorded messages, automatic telephone dialing systems, and unsolicited commercial email messages to wireless telecommunications devices. The public reporting for this collection of information is estimated to average 3-30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the required data, and completing and reviewing the collection of information. If you have any comments on this burden estimate, or how we can improve the collection and reduce the burden it causes you, please write to the Federal Communications Commission, OMD-PERM, Paperwork Reduction Project (3060-1088), Washington, DC 20554. We will also accept your comments regarding the Paperwork Reduction Act aspects of this collection via the Internet if you send them to PRA@fcc.gov.  PLEASE DO NOT SEND YOUR COMPLETED FORMS TO THIS ADDRESS.

Remember - You are not required to respond to a collection of information sponsored by the Federal government, and the government may not conduct or sponsor this collection, unless it displays a currently valid OMB control number or if we fail to provide you with this notice. This collection has been assigned an OMB control number of 3060-1088.

In addition, the information that consumers provide when filling out FCC Form 1088 is covered by the system of records notice, FCC/CIB-1, Informal Complaints and Inquiries File (Broadcast, Common Carrier, and Wireless Telecommunications Bureau Radio Services).  The Commission is authorized to request this information from consumers under 47 U.S.C. 206, 208, 301, 303, 309(e), 312, 362, 364, 386, 507, and 51; and 47 CFR 1.711 et seq.

Under this system of records notice, FCC/CIB-1, the FCC may disclose information that consumers provide as follows: when a record in this system involves a complaint against a common carrier, the complaint is forwarded to the defendant carrier who must, within a prescribed time frame, either satisfy the complaint or explain to the Commission and the complainant its failure to do so; where there may be a violation or potential violation of a statute, regulation, rule, or order, records from this system may be referred to the appropriate Federal, state, or local agency responsible for investigating or prosecuting a violation or for enforcing or implementing the statute, rule, regulation, or order; a record from this system may be disclosed to a Federal agency, in response to its request, in connection with the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract, or the issuance of a license, grant or other benefit; a record on an individual in this system of records may be disclosed, where pertinent, in any legal proceeding to which the Commission is a party before a court or administrative body; a record from this system of records may be disclosed to the Department of Justice or in a proceeding before a court or adjudicative body when: (a) the United States, the Commission, a component of the Commission, or, when represented by the government, an employee of the Commission is a party to litigation or anticipated litigation or has an interest in such litigation, and (b) the Commission determines that the disclosure is relevant or necessary to the litigation; a record on an individual in this system of records may be disclosed to a Congressional office in response to an inquiry the individual has made to the Congressional office; a record from this system of records may be disclosed to GSA and NARA for the purpose of records management inspections conducted under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall not be used to make a determination about individuals.

In each of these cases, the FCC will determine whether disclosure of the information in this system of records notice is compatible with the purpose for which the records were collected. Furthermore, information in this system of records notice are available for public inspection after redaction of information that could identify the complainant or correspondent, i.e., name, address and/or telephone number.

**THE FOREGOING NOTICE IS REQUIRED BY THE PAPERWORK REDUCTION ACT OF 1995, PUBLIC LAW 104-13, OCTOBER 1, 1995, 44 U.S.C. SECTION 3507 AND THE PRIVACY ACT OF 1974, PUBLIC LAW 93-579, DECEMBER 31, 1974, 5 U.S.C. SECTION 552a(e)(3).**

MAR-19-2004 10:38A FROM:NELSON                909-948-1022    TO:19664108232    P.1
Federal Communications Commission (FCC) - Form 1088 - Junk Faxes and Telemarketing    Page 1 of 1



MAR-10-2004 10:33A FROM:NELSON          909-946-1632          TO:18664188632          P.2
PRESIDENTIAL WHO'S WHO TO: (18664188632)          1236 1009970545.00 Pg 0101



*Presidential Who's Who*
*Among Business and Professional Achievers*

Dear Owner/ Managing Director,

It is my pleasure to inform you that on October 4, 2007, your information
was reviewed and accepted for inclusion in the 2008 edition.

Presidential Who's Who each year recognizes and selects key executives, professionals and
organizations in all disciplines and industries for outstanding business and professional
achievements.

This recognition is shared by those who have reached a distinguished level of success in their
chosen profession.

Please take a moment to complete the invitation form below. We would also ask that you write
clearly as it will be reviewed by our editorial department.

As a reminder, Presidential Who's who is pleased to inform you that there are no fees or dues to
be included in the publication.

On behalf of the CEO and our esteemed staff we wish you continued success.

Sincerely,
MarkAnthony McGuiness
Chief Operations Officer
Presidential Who's Who
718-707-6631

Please fax this form back to: **866 676-5744** by November 12

*PRESIDENTIAL WHO'S WHO among Business and Professional Achievers*

NAME (FIRST, MIDDLE INITIAL, LAST)                    JOB TITLE

COMPANY NAME

COMPANY ADDRESS          CITY          STATE          ZIP

BUSINESS PHONE # EXT          HOME OR MOBILE (NOT FOR EDITION)          FAX (FOR EDITION)

SIGNATURE

INDUSTRY (MEDICINE, LAW, ENGINEERING, ETC)          PRINCIPAL PRODUCT OR SERVICE

PERSONAL SPECIALTY          TYPE OF BUSINESS

# EXHIBIT B

Federal Communications Commission                                FCC 10–160

Before the
Federal Communications Commission
Washington, D.C.  20554

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Presidential Who's Who | ) | File No. EB-08-TC-2507 |
| dba Presidential Who's Who, Inc. | ) | |
| | ) | NAL/Acct. No. 201032170005 |
| Apparent Liability for Forfeiture | ) | FRN: 0020197919 |
| | ) | |

NOTICE OF APPARENT LIABILITY FOR FORFEITURE

Adopted: September 13, 2010                    Released:  September 13, 2010

By the Commission:

## I.   INTRODUCTION

1.      In this *Notice of Apparent Liability for Forfeiture* ("NAL"),[1] we find that Presidential Who's Who dba Presidential Who's Who, Inc. ("Presidential Who's Who")[2] apparently willfully and repeatedly violated section 227 of the Communications Act of 1934, as amended ("Act"), and the Commission's related rules and orders, by delivering at least seventy-three unsolicited advertisements to the telephone facsimile machines of at least sixty-nine consumers.[3] Based on the facts and circumstances surrounding these apparent violations, we find that Presidential Who's Who is apparently liable for a forfeiture in the amount of $345,000. Presidential Who's Who will have the opportunity to submit evidence and arguments in response to this NAL to show that no forfeiture should be imposed or that some lesser amount should be assessed.

---

[1] *See* 47 U.S.C. § 503(b)(1).  The Commission has the authority under this section of the Act to assess a forfeiture against any person who has "willfully or repeatedly failed to comply with any of the provisions of this Act or of any rule, regulation, or order issued by the Commission under this Act ...."  *See also* 47 U.S.C. § 503(b)(5) (stating that the Commission has the authority under this section of the Act to assess a forfeiture penalty against any person who does not hold a license, permit, certificate or other authorization issued by the Commission or an applicant for any of those listed instrumentalities so long as such person (A) is first issued a citation of the violation charged; (B) is given a reasonable opportunity for a personal interview with an official of the Commission, at the field office of the Commission nearest to the person's place of residence; and (C) subsequently engages in conduct of the type described in the citation).

[2] According to publicly available information, Presidential Who's Who is also doing business as Presidential Who's Who, Inc.  Therefore, all references in this NAL to "Presidential Who's Who" encompass Presidential Who's Who as well as Presidential Who's Who, Inc.  Presidential Who's Who has offices at 2927 Queens Plaza, Long Island City, NY 11101 and 140 Rockaway Parkway, Valley Stream, NY 11580.  Mark Anthony McFallen is listed as the contact person for Presidential Who's Who.  Accordingly, all references in this NAL to Presidential Who's Who also encompass the foregoing individual and all other principals and officers of this entity, as well as the corporate entity itself.

[3] *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(3); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order and Third Order on Reconsideration*, 21 FCC Rcd 3787 (2006) ("*2006 TCPA Order*").

## II.    BACKGROUND

2.        Section 227(b)(1)(C) of the Act makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."[4]  The term "unsolicited advertisement" is defined in the Act and the Commission's rules as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission in writing or otherwise."[5]  Under an exception to the general prohibition in the Commission's rules, a party may deliver unsolicited advertisements to persons with whom it has an "established business relationship"[6] if certain conditions are met (*i.e.*, the sender obtained the number of the facsimile machine either (i) through a voluntary communication by the recipient, directly to the sender, within the context of the established business relationship, or (ii) through a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution.)[7]

3.        On June 18, 2008, in response to one or more consumer complaints alleging that Presidential Who's Who had faxed unsolicited advertisements, the Enforcement Bureau ("Bureau") issued a citation[8] to Presidential Who's Who, pursuant to section 503(b)(5) of the Act.[9]  The Bureau cited Presidential Who's Who for using a telephone facsimile machine, computer, or other device, to send unsolicited advertisements for entry in and sale of the publication "Presidential Who's Who" to a telephone facsimile machine, in violation of section 227 of the Act and the Commission's related rules and orders.  The citation warned Presidential Who's Who that subsequent violations could result in the imposition of monetary forfeitures of up to $11,000 per violation, and included a copy of the consumer complaints that formed the basis of the citation.[10]  The citation informed Presidential Who's Who that within 30 days of the date of the citation, it could either request an interview with Commission staff, or provide a written statement responding to the citation.  Frank Ciaccio, on behalf of Presidential Who's Who, requested an interview and claimed that the fax on which the citation was based was not an advertisement.[11]

---

[4] 47 U.S.C. § 227(b)(1)(C); *see also* 47 C.F.R. § 64.1200(a)(3).

[5] 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(13).

[6] An "established business relationship" is defined as a prior or existing relationship formed by a voluntary two-way communication "with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5); *see also* 47 U.S.C. § 227(a)(2).

[7] *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(3)(i), (ii).

[8] Citation from Kurt A. Schroeder, Deputy Chief, Telecommunications Consumers Division, Enforcement Bureau, File No. EB-08-TC-2507, issued to Presidential Who's Who on June 18, 2008.

[9] *See* 47 U.S.C. § 503(b)(5) (authorizing the Commission to issue citations to persons who do not hold a license, permit, certificate or other authorization issued by the Commission or who are not applicants for any of those listed instrumentalities for violations of the Act or of the Commission's rules and orders).

[10] Bureau staff mailed the citation to the following address: Presidential Who's Who, 2927 Queens Plaza, Long Island City, NY 11101. *See* note 2, *supra*.  As indicated below, *see infra* note 14, for violations occurring after September 2, 2008, the forfeiture maximum has since been increased to $16,000 per violation.

[11] Telephone interview conducted on July 11, 2008 between Frank Ciaccio, representing Presidential Who's Who, and Kurt Schroeder, Deputy Chief, Telecommunications Consumers Division, Enforcement Bureau, and Mary
(continued....)

4.        Despite the citation's warning that subsequent violations could result in the imposition of monetary forfeitures, we have received additional consumer complaints indicating that Presidential Who's Who continued to engage in such conduct after issuance of the citation.[12]  We base our action here specifically on complaints filed by sixty-nine consumers establishing that Presidential Who's Who continued to send seventy-three unsolicited advertisements to telephone facsimile machines after the date of the citation.[13]

5.        Section 503(b) of the Act authorizes the Commission to assess a forfeiture for each violation of the Act, or of any rule, regulation, or order issued by the Commission under the Act, by a non-common carrier or other entity not specifically designated in section 503 of the Act.  The maximum penalty for such a violation is $16,000 for a violation occurring on or after September 2, 2008.[14]  In exercising such authority, the statute directs us to take into account "the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require."[15]

## III.    DISCUSSION

### A.      Violations of the Commission's Rules Restricting Unsolicited Facsimile Advertisements

6.        We find that Presidential Who's Who apparently violated section 227 of the Act and the Commission's related rules and orders by using a telephone facsimile machine, computer, or other device to send at least seventy-three unsolicited advertisements to the sixty-nine consumers identified in the Appendix.  This NAL is based on evidence that sixty-nine consumers received unsolicited fax advertisements from Presidential Who's Who *after* the Bureau's citation.  The facsimile transmissions advertise entry in "Presidential Who's Who" publication and an opportunity to purchase the compilation publication.

---

(...continued from previous page)
Romano, Special Advisor, Telecommunications Consumers Division, Enforcement Bureau.  The staff determined that the fax in question was, in fact, an advertisement. *See infra* para. 4.

[12] *See* Appendix for a listing of the consumer complaints against Presidential Who's Who requesting Commission action.

[13] We note that evidence of additional instances of unlawful conduct by Presidential Who's Who may form the basis of subsequent enforcement action.

[14] Section 503(b)(2)(C) provides for forfeitures up to $10,000 for each violation in cases not covered by subparagraph (A) or (B), which address forfeitures for violations by licensees and common carriers, among others. *See* 47 U.S.C. § 503(b).  In accordance with the inflation adjustment requirements contained in the Debt Collection Improvement Act of 1996, Pub. L. 104-134, Sec. 31001, 110 Stat. 1321, the Commission implemented an increase of the maximum statutory forfeiture under section 503(b)(2)(C) first to $11,000 and more recently to $16,000. *See* 47 C.F.R. §1.80(b)(3); *Amendment of Section 1.80 of the Commission's Rules and Adjustment of Forfeiture Maxima to Reflect Inflation,* 15 FCC Rcd 18221 (2000) (forfeiture maximum for this type of violator set at $11,000); *Amendment of Section 1.80(b) of the Commission's Rules and Adjustment of Forfeiture Maxima to Reflect Inflation,* 19 FCC Rcd 10945 (2004) (amendment of section 1.80(b) to reflect inflation left the forfeiture maximum for this type of violator at $11,000); *Amendment of Section 1.80(b) of the Commission's Rules, Adjustment of Forfeiture Maxima to Reflect Inflation,* 23 FCC Rcd 9845 (2008) (amendment of section 1.80(b) to reflect inflation increased the forfeiture maximum for this type of violator to $16,000).

[15] 47 U.S.C. § 503(b)(2)(D); *The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines, Report and Order,* 12 FCC Rcd 17087, 17100-01 para. 27 (1997) (*Forfeiture Policy Statement*), *recon. denied,* 15 FCC Rcd 303 (1999).

**Federal Communications Commission**                    **FCC 10–160**

7.      We disagree with the contention of Frank Ciaccio, on behalf of Presidential Who's Who, that the fax on which the citation was based was not an advertisement, but a request for information from people to include their information in its publication free of charge.[16] Instead, we find that the faxes in question serve as a pretext to advertise a commercial product or service - the "Presidential Who's Who" publication and associated products.  First, these faxes invite individuals to share information and give their permission to have it included in its publication.  Although there is no cost for inclusion in the publication, the products associated with the publication, such as professional directories or plaques, are later commercially available.  For example, a complainant indicated that the offer to be included in the publication was free of charge, but when she later called the company, "they try to sell you the publication at a ridicu[lous] price."[17]  Moreover, other complaints indicate that the faxes also offered the opportunity to purchase the publication.[18]  The Commission has found that when promotions for "free" services serve as pretext for later solicitations, the original promotional fax constitutes an advertisement.[19]  Specifically, we stated that "free" publications are "often part of an overall marketing campaign to sell property, goods, or services," and thus, absent an established business relationship, were prohibited as "unsolicited advertisements."[20]  In this instance, we find that the faxes serve as part of an overall campaign to sell the "Presidential Who's Who" publication and associated products, and as such they are advertisements within the meaning of the section 227.  Further, according to the complaints, the consumers did not give Presidential Who's Who permission to send the facsimile transmissions.[21]  Consequently, the faxes at issue here fall within the definition of an "unsolicited advertisement."[22]  Complaints also indicate that the recipients did not have established business relationships with Presidential Who's Who.[23]  Based on the entire record, including the consumer complaints, we therefore conclude that Presidential Who's Who apparently violated section 227 of the Act and the Commission's related rules and orders by sending seventy-three unsolicited advertisements to sixty-nine consumers' facsimile machines.

**B.      Proposed Forfeiture**

8.      We find that Presidential Who's Who is apparently liable for a forfeiture in the amount of $345,000.  Although the *Commission's Forfeiture Policy Statement* does not establish a base forfeiture amount for violating the prohibition against using a telephone facsimile machine to send unsolicited

---

[16] *See supra* note 11.

[17] *See, e.g.,* complaint dated November 17, 2009, from C. Cox.

[18] *See, e.g.,* complaints dated September 14, 2009, from M. DeWater, and from J. Shamblin, dated December 9, 2009.

[19] *2006 TCPA Order*, 21 FCC Rcd 3787, para. 52 (footnotes omitted).

[20] *Id.* (More broadly, the Commission stated: "We conclude that facsimile messages that promote goods or services even at no cost, such as free magazines subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TPA's definition.  In many instances, 'free' seminars serve as a pretext to advertise commercial products and services.  Similarly, 'free' publications are often part of an overall marketing campaign to sell property, goods, or services.  For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available.  Based on this, it is reasonable to presume that such messages describe the 'quality of any property, goods, or services.'  Therefore, facsimile communications regarding such free goods and services, if not purely 'transactional,' would require the sender to obtain the recipient's permission beforehand, in the absence of an EBR.")

[21] *See, e.g.,* complaint dated November 17, 2009, from V. Asenio (stating that he has never done any business with the fax advertiser, never made an inquiry or application to the fax advertiser and never given permission for the company to send the fax.)  The complainants involved in this action are listed in the Appendix.

[22] *See* 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(13) (definition previously at § 64.1200(f)(10)).

[23] *See, e.g., supra* note 21.

advertisements, the Commission has previously considered $4,500 per unsolicited fax advertisement to be an appropriate base amount.[24]  We apply that base amount to each of seventy of the apparent violations. In addition, where the consumer requests the company to stop sending facsimile messages, and the company continues to send them, the Commission has previously considered $10,000 per unsolicited fax advertisement the appropriate forfeiture for such egregious violations.[25]  Here, three consumers specifically requested that Presidential Who's Who cease sending facsimiles.[26]  Notwithstanding these requests, an additional three facsimiles were sent to these consumers.  Thus, we apply the $10,000 amount to each of three of these apparent violations.  Thus, a total forfeiture of $345,000 is proposed. Presidential Who's Who will have the opportunity to submit evidence and arguments in response to this NAL to show that no forfeiture should be imposed or that some lesser amount should be assessed.[27]

## IV.    CONCLUSION

9.      We have determined that Presidential Who's Who apparently violated section 227 of the Act and the Commission's related rules and orders by using a telephone facsimile machine, computer, or other device to send at least seventy-three unsolicited advertisements to the sixty-nine consumers identified in the Appendix.  We have further determined that Presidential Who's Who is apparently liable for a forfeiture in the amount of $345,000.

## V.    ORDERING CLAUSES

10.      Accordingly, **IT IS ORDERED,** pursuant to section 503(b) of the Act, 47 U.S.C. § 503(b), and section 1.80 of the rules, 47 C.F.R. § 1.80,  that Presidential Who's Who is hereby **NOTIFIED** of this **APPARENT LIABILITY FOR A FORFEITURE** in the amount of $345,000 for willful or repeated violations of section 227(b)(1)(C) of the Communications Act, 47 U.S.C. § 227(b)(1)(C), section 64.1200(a)(3) of the Commission's rules, 47 C.F.R. § 64.1200(a)(3), and the related orders described in the paragraphs above.

11.      **IT IS FURTHER ORDERED THAT,** pursuant to section 1.80 of the Commission's rules,[28] within thirty (30) days of the release date of this *Notice of Apparent Liability for Forfeiture,* Presidential Who's Who **SHALL PAY** the full amount of the proposed forfeiture or **SHALL FILE** a written statement seeking reduction or cancellation of the proposed forfeiture.

12.      Payment of the forfeiture must be made by check or similar instrument, payable to the order of the Federal Communications Commission.  The payment must include the NAL/Account Number and FRN Number referenced above.  Payment by check or money order may be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000.  Payment by overnight mail may be sent to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.  Payment by wire transfer may be made to ABA Number 021030004, receiving bank TREAS/NYC, and account number 27000001.  For payment by credit card,

---

[24] *See Get-Aways, Inc.,* Notice of Apparent Liability For Forfeiture, 15 FCC Rcd 1805 (1999); *Get-Aways, Inc.,* Forfeiture Order, 15 FCC Rcd 4843 (2000); *see also US Notary, Inc.,* Notice of Apparent Liability for Forfeiture, 15 Rcd 16999 (2000); *US Notary, Inc.,* Forfeiture Order, 16 FCC Rcd 18398 (2001); *Tri-Star Marketing, Inc.,* Notice of Apparent Liability For Forfeiture, 15 FCC Rcd 11295 (2000); *Tri-Star Marketing, Inc.,* Forfeiture Order, 15 FCC Rcd 23198 (2000).

[25] *See Carolina Liquidators, Inc.,* Notice of Apparent Liability for Forfeiture, 15 FCC 16,837, 16,842 (2000); *21st Century Fax(es) Ltd., AKA 20th Century Fax(es),* 15 FCC Rcd 24,406, 24,411 (2000).

[26] *See* Appendix.

[27] *See* 47 U.S.C. § 503(b)(4)(C); 47 C.F.R. § 1.80(f)(3).

[28] 47 C.F.R. § 1.80.

an FCC Form 159 (Remittance Advice) must be submitted.  When completing the FCC Form 159, enter the NAL/Account number in block number 23A (call sign/other ID), and enter the letters "FORF" in block number 24A (payment type code).  Presidential Who's Who will also send electronic notification to Johnny.Drake@fcc.gov on the date said payment is made.  Requests for full payment under an installment plan should be sent to: Chief Financial Officer -- Financial Operations, 445 12th Street, SW, Room 1-A625, Washington, D.C.  20554.   Please contact the Financial Operations Group Help Desk at 1-877-480-3201 or Email: ARINQUIRIES@fcc.gov with any questions regarding payment procedures.

13.      The response, if any, must be mailed both to: Marlene H. Dortch, Secretary, Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554, ATTN:  Enforcement Bureau – Telecommunications Consumers Division; and to Kurt Schroeder, Acting Chief, Telecommunications Consumers Division, Enforcement Bureau, Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554, and must include the NAL/Acct. No. referenced in the caption.  Documents sent by overnight mail (*other than* United States Postal Service Express Mail) must be addressed to: Marlene H. Dortch, Secretary, Federal Communications Commission, Office of the Secretary, 9300 East Hampton Drive, Capitol Heights, MD 20743.  Hand or messenger-delivered mail should be directed, without envelopes, to Marlene H. Dortch, Secretary, Federal Communications Commission, Office of the Secretary, 445 12th Street, SW, Washington, DC 20554 (deliveries accepted Monday through Friday 8:00 a.m. to 7:00 p.m. only).  See www.fcc.gov/osec/guidelines.html for further instructions on FCC filing addresses.

14.      The Commission will not consider reducing or canceling a forfeiture in response to a claim of inability to pay unless the petitioner submits: (1) federal tax returns for the most recent three-year period; (2) financial statements prepared according to generally accepted accounting practices; or (3) some other reliable and objective documentation that accurately reflects the petitioner's current financial status.  Any claim of inability to pay must specifically identify the basis for the claim by reference to the financial documentation submitted.

15.      **IT IS FURTHER ORDERED** that a copy of this *Notice of Apparent Liability for Forfeiture* shall be sent by Certified Mail Return Receipt Requested and First Class mail to Presidential Who's Who, Attention:  Mark Anthony McFallen, 2927 Queens Plaza, Long Island City, NY 11101 and 140 Rockaway Parkway, Valley Stream, NY 11580.

FEDERAL COMMUNICATIONS COMMISSION


Marlene H. Dortch
Secretary

6

Federal Communications Commission                    FCC 10–160

## APPENDIX

### Complainants and Violation Dates

| Complainant received facsimile solicitations | Violation Date(s) |
|---|---|
| Asensio, V. | 11/17/09 |
| Axilbund, C. | 11/17/09 |
| Baldwin, G. | 12/15/09 |
| Benefield, R. | 3/30/10 |
| Bishop, C. | 3/23/10 |
| Blumenthal, M. | 9/14/09 |
| Borgic, D. | 1/20/10 |
| Brown, K. | 9/14/09 |
| Brunjes, D. | 1/05/10, 3/23/10 |
| Ciulik, J. | 9/30/09 |
| Cox, C. | 11/17/09 |
| Chapura, J. | 2/01/10 |
| Davis, R. | 11/17/09 |
| Davis, W. | 1/05/10 |
| Decker, B. | 10/07/09 |
| Drattell, E. | 9/14/09 |
| Edwards, K. | 11/17/09 |
| Falcon, J. | 11/2/09 |
| Fuller, J. | 11/2/09 |
| Geary, T. | 9/14/09 |
| Gomes, R. | 10/14/09 |
| Gade, F. | 10/20/09, 12/07/09 |
| Grant, H. | 9/29/09 |
| Hackman, D. | 11/17/09 |
| Hanson, G. | 12/09/09 |
| Hudkins, J. | 11/17/09 |
| Jansky, M. | 9/29/09 |
| Jimenez, O. | 10/06/09 |
| Johnson, M. | 3/23/10 |
| Jones, J. | 2/01/10 |
| Kane, J. | 1/20/10 |
| Kalm, T. | 9/14/09 |
| Kang, C. | 10/14/09 |
| King, S. | 10/06/09 |
| Lagrutta, R. | 3/30/10 |
| Leigh, D. | 1/12/10 |
| Lester, R. | 2/16/10 |
| Lewis, R. | 10/20/09 |
| Lilly, T. | 3/23/10 |
| Mac, G. | 2/01/10 |
| Malarkey, P. | 1/20/10 |
| Malear, R. | 12/15/09 |
| Marzane, R. D. | 2/01/10 |
| McLees, R. | 10/27/09 |

**Federal Communications Commission**          **FCC 10–160**

| | |
|---|---|
| Maskey, M. | 11/2/09 |
| Muenchow, J. | 2/23/10 |
| Newberg, B. | 1/20/10 |
| Norman, D. | 11/2/09 |
| O'Connell, M. | 1/20/10 |
| Pitrik, Mike | 2/16/10 |
| Poss, V. | 1/12/10 |
| Richardson, K. | 10/08/09 |
| Rodman, R. | 11/17/09 |
| Schultz, C. | 9/14/09 |
| Shamblin, J. | 12/09/09 |
| Schlosshauer, P. | 9/14/09 |
| Schlesinger, S. | 12/12/09, 4/22/10 |
| Soesbe, K. | 11/08/09, 11/23/09 |
| Spittler, R. | 11/17/09 |
| Stacharawski, G. | 1/12/10 |
| Swartz, M. | 3/30/10 |
| Tilden, R. B. | 11/02/09 |
| Wilson, T. | 2/23/10 |
| Witherspoon, C. | 11/2/09 |
| Wood, V. | 9/30/09 |
| VanDeWater, M. | 9/14/09 |

| Complainant received facsimile solicitations after requesting no more be sent | Violation Date(s) |
|---|---|
| Asuri, R. | 10/27/09 |
| Broder, S. | 11/2/09 |
| Wax, B. | 9/30/09 |

# EXHIBIT C



# PRESIDENTIAL WHO'S WHO

### AMONG BUSINESS AND PROFESSIONAL ACHIEVERS
#### REMEMBER THE PAST, CHALLENGE THE FUTURE

sm

Received & Inspected

NOV 1 5 2010

FCC Mail Room

Nov 10th, 2010

In the matter of Presidential Who's Who
Dba Presidential Who's Who, Inc.
Apparent Liability for Forfeiture

File No. EB-08-TC-2507
NAL/Acct. No. 201032170005
FRN: 0020197919

RECEIVED

NOV 1 5 2010

TELECOMMUNICATIONS
CONSUMERS DIVISION

To Marlene H. Dortch

    This letter is in response to a notice of apparent liability for forfeiture against Presidential Who's Who.

    On or about June 18th, 2008 we received a citation from the FCC in regards to consumer complaints of unwanted faxes by Presidential Who's Who. As per your request we had a telephone interview in which we were asked to defend our position that our facsimile document is not illegal. As I stated during the interview on June 18th, 2008 our members receive a complimentary listing in our publication. The telephone interview was the last communication we had with the FCC. We were never contacted by either mail or telephone to cease and desist the use of our facsimile to any consumer. Presidential Who's Who obtains its fax numbers through reputable companies such and Dunn and Bradstreet. Presidential Who's Who adheres to the FCC regulation that requires companies to disclose the name of the company sending the facsimile. Furthermore our document also discloses our telephone number as well as the company address. In addition we provide a fax removal number that the consumer can call to be removed from future faxes.

    Then on or about Sept 13th, 2010 we received a telephone call from an attorney in Maryland stating that he has access to a pending NAL against Presidential Who's Who. On that day I contacted the FCC to verify the accuracy of what this attorney was stating. That afternoon I was informed by someone at the FCC that information that was provided to me by the attorney was indeed not truthful. After doing some research online we found that there was indeed a NAL forfeiture of $350,000 against Presidential Who's Who. After reading the complaint we noticed that the two addresses that are listed on the complaint for Presidential Who's Who are not accurate. Presidential Who's Who does not currently have any offices at 29-27 Queens Plaza, Long Island City NY 11101 and has never had any offices at 140 Rockaway Pkwy in Valley Stream NY 11580. *old address*

    It is our position that after the telephone interview was conducted, if the FCC has sent any correspondence to the above mentioned locations, they were never received by Presidential Who's Who. Furthermore if the FCC finds that our facsimile is indeed illegal we will cease and desist immediately. We request that a formal panel review our facsimile document to indeed



# PRESIDENTIAL WHO'S WHO

### AMONG BUSINESS AND PROFESSIONAL ACHIEVERS
#### REMEMBER THE PAST, CHALLENGE THE FUTURE

sm

determine that it is or isn't legal. Presidential Who's Who also states for the record that as of Nov 10th, 2010 has still not received anything from the FCC regarding the forfeiture and are basing this letter on the results of a Google search online.

   In closing we would want to first express our apologies to any and all consumers who have filed complaints with regards to the facsimile. Based on the facts stated in this letter , we request that the complaint against Presidential Who's Who be cancelled and furthermore we request a response in a timely manner because of the increased volume of concern that our business associates have expressed due to the complaint listed online. Thank you for your time and consideration in the matter.

Sincerely,
Frank Ciaccio

President and CEO

134 Rockaway Ave Floor. 2, Valley Stream, New York, 11580 Phone: 516-368-9910 Fax: 516-368-9939

# EXHIBIT D



**PRESIDENTIAL WHO'S WHO & NATIONAL REGISTERS WHO'S WHO**
**AMONG BUSINESS AND PROFESSIONAL ACHIEVERS**
REMEMBER THE PAST, CHALLENGE THE FUTURE

01/26/11

Rosemary Cabral
Telecommunications Consumers Division
Federal Communications Commission
445 12th Street, S.W
Room 4-A161
Washington, DC 20554

Dear Rosemary,

  Enclosed we have provided a list of websites and locations on the worldwide web where Presidential Who's Who obtained the fax numbers in question. As we understand the law, these numbers were obtained legally and not a single one of the fax numbers in question had a <u>do not solicit</u> notification attached to it. If you have any further questions please do not hesitate to call. Thank you for all your patience and consideration.

Frank Ciaccio
President & CEO
Presidential Who's Who

134 Rockaway Ave Flr. 2, Valley Stream, New York, 11580 Phone: 516-368-9910 Fax: 516-368-9939

| Business Name | Fax Number Listed |
|---|---|
| Central Auto ReBuilders Of Brookfield | 708-485-7442 |
| Fullerton University Village | 714-870-7840 |
| Craftwood Lumber and Hardware | 847-831-2805 |
| Himebaugh Consulting Inc | 330-493-9771 |
| Heitkamp Inc | 860-945-6126 |
| Love, Barnes & McKew | 703-941-5723 |
| Image Entertainment Inc. | 818-407-9151 |
| SmallCorp | 413-773-7386 |
| Tub Tech Enterprises, Inc. | 703-490-5256 |
| One Way Street | 303-790-4265 |
| Applied Plasmonics, Inc | 352-372-0440 |
| Finncom | 310-540-0350 |
| Allied Home Mortgage | 256-878-1094 |
| Brad J Decker CPA | 618-740-0293 |
| Flint Facilities Maintenance, LLC | 706-846-2497 |
| Action Marine and Dive Inc | 305-451-0027 |
| Greg Hanson | 775-256-2231 |
| O'Donnell, Schwartz, Glanstein & Lilly , LLP | 516-794-9466 |
| Commercial Fleet Repair LLC | 785-862-1209 |
| SitStay, Inc. | 402-467-5055 |
| Christopher H. Kang , M.D | 559-875-3834 |
| Alternacare | 918-682-0496 |
| San Diego Unified School District | 619-725-7186 |

| | |
|---|---|
| Sheldon Broder | 773-486-1606 |
| Jo Falcon | 415-826-0330 |
| Eric Drattell | 925-398-8384 |
| Rick McLees | 760-347-9091 |
| Executive Contracting | 301-384-7560 |
| Davis Associates, Inc. | 617-964-4917 |
| Randy Rodman | 310-318-3923 |
| George Mac | 808-836-2211 |
| Southwest Sign Company | 951-735-9667 |
| John Kane | 805-498-2127 |
| Rick Lagrutta | 209-887-3387 |
| Charles Axilbund | 310-390-4720 |
| City Of Mount Dora | 352-735-0083 |
| Custino Enterprises | 650-638-7921 |
| Saul Schlesinger | 845-371-9254 |
| Bryan R Tilden | 919-542-2601 |
| Max Blumenthal | 216-2910385 |
| James Hudkins | 510-864-1504 |
| Marjorie | 773-921-8505 |
| Stanley U.S | 740-852-7249 |
| Michael Oconnell | 847-265-6952 |
| Tracy Kalm | 847-491-6419 |
| James Fuller | 650-941-4098 |

| | |
|---|---|
| Mike Pitrik | 718-459-0303 |
| | |
| R. David Marzane | 415-285-5420 |
| | |
| Noble Diagnostics | 414-257-1065 |
| | |
| NYC Police Department | 718-230-1374 |
| | |
| Maskorp Companies | 217-698-1181 |
| | |
| Grove madsen Industries | 775-322-3995 |
| | |
| Southeastern Penn Trans Authority | 215-724-3874 |
| | |
| DC Leigh Enterprises Inc | 805-528-1693 |
| | |
| Motoventure | 512-858-2123 |
| | |
| Lakeside Baptist Church | 804-266-7351 |

| Location | Complaint Number |
|---|---|
| www.google.com | 09-T00456646-1 |
| www.localautobody.net | 09-T00482032-1 |
| www.scufuniversityvillage.com | 09-T00454903-1 |
| | |
| www.google.com | 10-T00528133-1 |
| www.superpages.com | 10-T00490850-1 |
| www.google.com | 09-T00441324-1 |
| http://jacksonbeldenchamber.chambermaster.com | |
| www.google.com | 09-T00483633-1 |
| www.utilitycontractoronline.com | |
| www.lbmadjusters.com | 09-T00446109-1 |
| www.naiia.com | |
| www.hoovers.com | 09-T00460668-1 |
| www.superpages.com | |
| www.smallcorp.com | 09-T00457248-1 |
| | |
| www.google.com | 09-T00464597-1 |
| www.superpages.com | |
| www.onewaystreet.com | 09-T00470181-1 |
| | |
| www.appliedplasmonics.com | 10-T00516251-1 |
| www.allpages.com | |
| www.finncom.com | 10-T00501777-1 |
| | |
| www.alliedhome.com | 09-T00445647-1 |
| | |
| www.brad-decker.com | 09-T00449862-1 |
| | |
| www.flintfm.com | 10-T00528376-1 |
| | |
| www.yellowpages.com | 10-T00530289-1 |
| www.citysquares.com | |
| www.perusion.com | 09-T00480064-1 |
| | |
| www.longislanddirectory.com | 10-T00526964-1 |
| | |
| www.truckdown.com | 09-T00437246-1 |
| | |
| www.superpages.com | 09-T00445383-1 |
| | |
| www.wellness.com | 09-T00454502-1 |
| www.healthline.com | |
| www.shopalternacare.com | 09-T00450040-1 |
| | |
| www.sandi.net | 10-T00503049-1 |

| | |
|---|---|
| www.whitepages.com | 09-T00463566-1 |
| www.whitepages.com | 09-T00463031-1 |
| www.whitepages.com | 09-T00439207-1 |
| http:// appraiserusa.com | 09-T00461348-1 |
| www.whitepages.com | 09-T00470706-1 |
| www.whitepages.com | 10-T00490332-1 |
| www.whitepages.com | 09-T00470361-1 |
| www.whitepages.com | 10-T00503446-1 |
| www.southwestsign.com | 09-T00450572-1 |
| www.whitepages.com | 10-T00499409-1 |
| www.whitepages.com | 10-T00530838-1 |
| www.iasinfo.com | 09-T00471393-1 |
| www.google.com | 09-T00480022-1 |
| www.jihualog.com | 09-T00470507-1 |
| www.whitepages.com | 10-T00493303-1 |
| www.google.com | 09-T00463090-1 |
| www.Google.com | 09-T00442718-1 |
| www.google.com | 09-T00470830-1 |
| www.phonetracer.com | 10-T00527023-1 |
| www.phonegenie.com | 10-T00530410-1 |
| www.phonegenie.com | 10-T00505872-1 |
| www.google.com | 09-T0043713-1 |
| www.whitepages.com | 09-T00466749-1 |

| | |
|---|---|
| www.whitepages.com | 10-T0051040-1 |
| | |
| www.google.com | 10-T00506461-1 |
| | |
| www.noblediagnostics.com | 09-T00470195-1 |
| | |
| www.google.com | 10-T00498014-1 |
| | |
| www.b2byellowpages.com | 09-T00463050-1 |
| | |
| www.openfos.com | 10-T00502003-1 |
| | |
| www.google.com | 10-T00509975-1 |
| | |
| www.google.com | 10-T00493349-1 |
| | |
| www.texasmonthly.com | 09-T00471579-1 |
| | |
| www.lbcfamily.com | 09-T00456037-1 |

| | |
|---|---|
| KMPG LLP | 214-722-1719 |
| | |
| R & D Equipment Inc | 405-616-0801 |
| | |
| General Motors | 810-236-2375 |
| | |
| Schultz DC Power Consulting | 847-587-7613 |
| | |
| WR Lending | 916-774-0250 |
| | |

| | |
|---|---|
| Peter Schlosshauer | 212-928-5178 |
| | |
| Gary Stacharowski | 410-203-2661 |
| | |
| Dan Hackman | 561-622-5828 |
| | |
| Kathryn Richardson | 949-367-0456 |
| | |
| Diane Norman | 217-854-4754 |
| | |
| Jeanette Muenchow | 512-255-8202 |
| | |
| Borgic | 847-824-8054 |
| | |
| Rosa Gomes | 808-689-5118 |
| | |

| Internet Search on worldwide web | 10-T00502947-1 |
|---|---|
| No Goods /Products/Services are promoted | |
| Internet Search on worldwide web | 09-T00482939-1 |
| No Goods /Products/Services are promoted | |
| Internet Search on worldwide web | 09-T00438328-1 |
| No Goods /Products/Services are promoted | |
| Internet Search on worldwide web | 09-T00437086-1 |
| No Goods /Products/Services are promoted | |
| Internet Search on worldwide web | 10-T00513466-1 |
| No Goods /Products/Services are promoted | |


| Has Not Provided any documentation proving we | 09-T00437636-1 |
|---|---|
| faxed any documents to that number | |
| Has Not Provided any documentation proving we | 10-T00493341-1 |
| faxed any documents to that number | |
| Has Not Provided any documentation proving we | 09-T00472848-1 |
| faxed any documents to that number | |
| Has Not Provided any documentation proving we | 09-T00449224-1 |
| faxed any documents to that number | |
| Has Not Provided any documentation proving we | 09-T00463011-1 |
| faxed any documents to that number | |
| Has Not Provided any documentation proving we | 10-T00513075-1 |
| faxed any documents to that number | |
| Has Not Provided any documentation proving we | 10-T00503483-1 |
| faxed any documents to that number | |
| Has Not Provided any documentation proving we | 09-T00453807-1 |
| faxed any documents to that number | |

# EXHIBIT E

**Federal Communications Commission**  FCC 11-95

Before the
**Federal Communications Commission**
Washington, D.C. 20554

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | File No.: EB-08-TC-2507 |
| Presidential Who's Who | ) | |
| dba Presidential Who's Who, Inc. | ) | NAL/Acct. No.: 201132170023 |
| | ) | FRN: 0020197919 |
| | ) | |
| Apparent Liability for Forfeiture | ) | |

## NOTICE OF APPARENT LIABILITY FOR FORFEITURE

Adopted: June 13, 2011                    Released:  June 13, 2011

By the Commission:

## I.   INTRODUCTION

1.      In this *Notice of Apparent Liability for Forfeiture* ("*NAL*"), we find that Presidential Who's Who dba Presidential Who's Who, Inc. ("Presidential Who's Who")[1] apparently willfully and repeatedly violated section 227(b)(1)(C) of the Communications Act of 1934, as amended (the "Communications Act" or "Act"), and section 64.1200(a)(3) of the Commission's rules, by delivering 31 unsolicited advertisements, or "junk faxes," to the telephone facsimile machines of 30 consumers.[2]  Based on the facts and circumstances surrounding these apparent violations, we find that Presidential Who's Who is apparently liable for a forfeiture in the amount of $295,000.

## II.   BACKGROUND

2.      The Telephone Consumer Protection Act of 1991 ("TCPA") was enacted by Congress to address problems of abusive telemarketing, including junk faxes.[3]  Unsolicited faxes often impose unwanted burdens on the called party, including costs of paper and ink, and making fax machines unavailable for legitimate business messages.  Section 227(b)(1)(C) of the Act

---

[1] According to publicly available information, Presidential Who's Who is also doing business as Presidential Who's Who, Inc.  Therefore, all references in this NAL to "Presidential Who's Who" encompass Presidential Who's Who as well as Presidential Who's Who, Inc.  Presidential Who's Who has offices at 134 Rockaway Ave., Valley Stream, NY 11580.  Frank Ciaccio, President, and Mark Anthony McGuiness, Chief Operating Officer, are the contact persons for Presidential Who's Who.  Accordingly, all references in this NAL to Presidential Who's Who also encompass the foregoing individuals and all other principals and officers of this entity, as well as the corporate entity itself.

[2] *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(3); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order and Third Order on Reconsideration*, 21 FCC Rcd 3787 (2006).

[3] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394, *codified at* 47 U.S.C. § 227.  *See also* Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005), *codified at* 47 U.S.C. § 227.

makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement. . . ."[4]

3.　　　On June 18, 2008, in response to a consumer complaint alleging that Presidential Who's Who had faxed an unsolicited advertisement, the Enforcement Bureau ("Bureau") issued a citation to Presidential Who's Who, pursuant to section 503(b)(5) of the Act.[5]  The Bureau cited Presidential Who's Who for using a telephone facsimile machine, computer, or other device, to send an unsolicited advertisement for entry in and sale of the publication "Presidential Who's Who" to a telephone facsimile machine, in violation of section 227(b)(1)(C) of the Act and section 64.1200(a)(3) of the Commission's rules.[6]  The citation informed Presidential Who's Who that within 30 days of the date of the citation, it could either request an interview with Commission staff, or provide a written statement responding to the citation.  Frank Ciaccio, on behalf of Presidential Who's Who, requested an interview and claimed that the fax on which the citation was based was not an advertisement.[7]  However, staff determined that the fax in question was, in fact, an advertisement.[8]

4.　　　Subsequently, the Commission received numerous complaints from consumers alleging that Presidential Who's Who had faxed additional unsolicited advertisements to them. The complaints filed by 69 consumers (alleging 73 violations of our junk fax rules) resulted in the issuance of an NAL against Presidential Who's Who on September 13, 2010 in the amount of $345,000.[9]  The *September 2010 NAL* ordered Presidential Who's Who either to pay the proposed forfeiture amount within 30 days or to submit evidence or arguments to show that no forfeiture

---

[4] 47 U.S.C. § 227(b)(1)(C).  The prohibition is subject to certain exceptions, such as if the sender has an "established business relationship" ("EBR") with the recipient; and the sender obtained the facsimile number from the recipient through voluntary communication in the context of an EBR, or from a directory, advertisement, or website on which the recipient voluntarily and publicly provided its facsimile number.  In addition, the unsolicited ad must notify the recipient how to opt out of receiving future such ads, subject to certain requirements. The Commission has adopted implementing rules.  47 C.F.R. § 64.1200(a)(3); *See also Junk Fax Prevention Act R&O*, 21 FCC Rcd 3787, 3793-96 (2006), *modified on other grounds*, 23 FCC Rcd 15059 (2008).

[5] *See* 47 U.S.C. § 503(b)(5) (requiring the Commission to issue citations to persons who do not hold a license, permit, certificate, or other authorization issued by the Commission, or who are not applicants for any of those listed instrumentalities, or engaged in activities for which such instrumentalities are necessary, for violations of the Act or of the Commission's rules and orders).

[6] Citation from Kurt A. Schroeder, Deputy Chief, Telecommunications Consumers Division, Enforcement Bureau, File No. EB-08-TC-2507, issued to Presidential Who's Who on June 18, 2008.

[7] Telephone interview conducted on July 11, 2008 between Frank Ciaccio, representing Presidential Who's Who, and Kurt Schroeder, Deputy Chief, Telecommunications Consumers Division, Enforcement Bureau, and Mary Romano, Special Advisor, Telecommunications Consumers Division, Enforcement Bureau.

[8] *See infra* ¶ 8. Presidential Who's Who did not provide any information to indicate that its fax was part of a prior transaction or that it had an established business relationship with the fax recipient. Additionally, neither the TCPA nor the Commission's rules contain any exceptions for unsolicited fax advertisements sent in error.

[9] *See Presidential Who's Who dba Presidential Who's Who, Inc.*, Notice of Apparent Liability for Forfeiture, 25 FCC Rcd 13759 (2010) ("*September 2010 NAL*").

should be imposed or that some lesser amount should be assessed.[10]  Presidential Who's Who responded to this first NAL on January 26, 2011, claiming the fax numbers to which the alleged unsolicited facsimile advertisements were sent were obtained legally.  It did not, however, provide any basis for this argument.

5.      In addition to the complaints forming the basis of the *September 2010 NAL*, the Commission has received still more complaints.  Specifically, the Commission has received additional complaints filed by 30 consumers, alleging that Presidential Who's Who sent 31 additional unsolicited advertisements not accounted for in the *September 2010 NAL* to telephone facsimile machines between June 14, 2010 and October 20, 2010.[11]

## III.    DISCUSSION

### A.      Apparent Violations of Section 227(b)(1)(C) of the Act and the Commission's Rules Restricting Unsolicited Facsimile Advertisements

6.      In this NAL, we find that Presidential Who's Who has again apparently violated section 227(b)(1)(C) of the Act and section 64.1200(a)(3) of our rules by using a facsimile machine, computer, or other device to send unsolicited advertisements to consumers.  Each of the consumers listed in the Appendix has provided evidence that Presidential Who's Who apparently used a telephone facsimile machine, computer, or other device to send the consumer at least one unsolicited advertisement.

7.      For purposes of our "junk fax" rules, an "unsolicited advertisement" is "any material advertising the commercial availability of or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."[12]  The Commission has explained that faxes promoting publications at no cost can qualify:

> "Free" publications are often part of an overall marketing campaign to sell property, goods, or services.  For instance, while the publication itself may be offered at no cost to the recipient, the products promoted within the publication are often commercially available.  Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services."  Therefore, facsimile communications regarding such free goods and services, if not purely "transactional," would require the sender to obtain the recipient's permission beforehand, in the absence of an EBR.[13]

8.      The faxes of Presidential Who's Who appear to qualify as unsolicited fax advertisements.  The facsimile transmissions at issue advertise entry in and sale of the publication "Presidential Who's Who."  While the faxes do not charge individuals for listings in the "Presidential Who's Who" publication, they do either offer for sale the publication itself, or serve as a prelude to such an offer.  For example, as we explained in the *September 2010 NAL*,

---

[10] *See September 2010 NAL*, 25 FCC Rcd at 13763.

[11] *See* Appendix for a listing of the consumer complaints against Presidential Who's Who requesting Commission action.  We note that evidence of additional instances of unlawful conduct by Presidential Who's Who may form the basis of subsequent enforcement action.

[12] 47 C.F.R. § 64.1200(f)(13).

[13] *Junk Fax Prevention Act of 2005*, 21 FCC Rcd at 3814 (footnotes omitted).

3

evidence demonstrates that Presidential Who's Who attempts to sell the publication in follow-up calls between the complainant and the company.[14]  As such, the faxes appear to be part of an "overall marketing campaign" to sell the publication.[15]  Under these circumstances, and given that the recipients have not authorized Presidential Who's Who to send them the faxes, the faxes underlying the complaints at issue in the current NAL qualify as unsolicited advertisements. Because the consumers, according to their complaints, did not have an established business relationship with Presidential Who's Who,[16] we conclude in the current NAL that Presidential Who's Who has apparently violated section 227(b)(1)(C) of the Act and section 64.1200(a)(3) of the Commission's rules by sending 31 unsolicited advertisements to 30 consumers' facsimile machines.

**B.      Proposed Forfeiture**

9.      After we have first issued a citation to an entity, as we have in this case, section 503(b) of the Act authorizes the Commission to propose a forfeiture for each subsequent violation of the Act, or of any rule, regulation, or order issued by the Commission under the Act.[17]  Section 503(b)(2)(E) mandates that, "[i]n determining the amount of such a forfeiture penalty, the Commission or its designee shall take into account the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require."[18]  Our forfeiture guidelines set forth the base amount for penalties for certain kinds of violations, and identify criteria, consistent with the section 503(b)(2)(E) factors, that may influence whether we adjust the base amount downward or upward.[19]  For example, we may adjust a penalty upward for "[e]gregious misconduct," an "[i]ntentional violation," or where the subject of an enforcement action has "[p]rior violations of any FCC requirements."[20]  The maximum penalty that the

---

[14] The company's website also advertises that the publication is for sale.  *See* http://www.presidentialwhoswho.org/index-5.html.

[15] *Junk Fax Prevention Act of 2005*, 21 FCC Rcd at 3814 (footnotes omitted).

[16] *See, e.g.*, complaint dated June 14, 2010 from A. Gallo (stating that complainant had never done any business with the company, never made an inquiry or application to the company, and never gave permission for the company to make the call).

[17] *See* 47 U.S.C. § 503(b)(1)(C).  The Commission has the authority under this section of the Act to assess a forfeiture against any person who has "willfully or repeatedly failed to comply with any of the provisions of this [Act] or of any rule, regulation, or order issued by the Commission under this [Act] ...." *Id.*  The Commission has the authority under section 503(b)(5) of the Act to assess such a forfeiture penalty against any person who does not hold a license, permit, certificate, or other authorization issued by the Commission or an applicant for any of those listed instrumentalities so long as such person (A) is first issued a citation of the violation charged; (B) is given a reasonable opportunity for a personal interview with an official of the Commission, at the field office of the Commission nearest to the person's place of residence; and (C) subsequently engages in conduct of the type described in the citation.  47 U.S.C. § 503(b)(5).

[18] 47 U.S.C. § 503(b)(2)(E).

[19] 47 C.F.R. § 1.80(b)(4) note.  The absence of a particular type of violation from the forfeiture guidelines must "not be taken to mean that the violation is unimportant or nonexistent," and "the Commission retains discretion to impose forfeitures for other violations." *Commission's Forfeiture Policy Statement*, Report & Order, 12 FCC Rcd 17087, 17110 (1997).

[20] 47 C.F.R. § 1.80(b)(4) note.

Commission may impose against an entity such as Presidential Who's Who is currently $16,000 per violation.[21]

10.     The Commission has previously considered $4,500 per unsolicited fax advertisement as an appropriate base forfeiture for violating the prohibition against sending them.[22] In addition, where the consumer has requested that the company stop sending facsimile messages, and the company has continued to send them, the Commission has previously considered $10,000 per unsolicited fax advertisement the appropriate forfeiture for such egregious violations.[23] Consistent with this past approach, we will apply the $4,500 base forfeiture to 30 of the apparent violations at issue in this NAL, and a $10,000 forfeiture to one of the apparent violations involved in this NAL where the consumer received a facsimile from Presidential Who's Who after specifically requesting that the company cease sending them.[24] Based on application of these standards, the total forfeiture proposed in this case would be $145,000.

11.     In the past, the Commission generally has not adjusted upward the base forfeiture for multiple, repeated violations of our junk fax rules. The base forfeiture of $4,500 alone was generally considered sufficient to protect consumers and deter companies from engaging in further unlawful conduct.[25] It has become increasingly apparent, however, that the amount of our proposed forfeitures for apparent violations of the junk fax prohibitions has failed to deter the more persistent wrongdoers, as is evident in the instant case.[26]

---

[21] 47 U.S.C. § 503(b)(2)(C). Section 503(b)(2)(C) provides for forfeitures of up to $10,000 for each violation in cases, as in the instant case, where the violation does not involve a Commission licensee, common carriers, among others. *See* 47 U.S.C. § 503(b)(2)(C). In accordance with the inflation adjustment requirements contained in the Debt Collection Improvement Act of 1996, Pub. L. 104-134, Sec. 31001, 110 Stat. 1321, the Commission implemented an increase of the maximum statutory forfeiture under section 503(b)(2)(C) first to $11,000 and more recently to $16,000. *See* 47 C.F.R. §1.80(b)(3). *See also Amendment of Section 1.80(b) of the Commission's Rules, Adjustment of Forfeiture Maxima to Reflect Inflation,* 23 FCC Rcd 9845 (2008) (amendment of section 1.80(b) to reflect inflation increased the forfeiture maximum for this type of violator to $16,000).

[22] *See Get-Aways, Inc.,* Notice of Apparent Liability for Forfeiture, 15 FCC Rcd 1805 (1999); *Get-Aways, Inc.,* Forfeiture Order, 15 FCC Rcd 4843 (2000); *see also US Notary, Inc.,* Notice of Apparent Liability for Forfeiture, 15 FCC Rcd 16999 (2000); *US Notary, Inc.,* Forfeiture Order, 16 FCC Rcd 18398 (2001); *Tri-Star Marketing, Inc.,* Notice of Apparent Liability for Forfeiture, 15 FCC Rcd 11295 (2000); *Tri-Star Marketing, Inc.,* Forfeiture Order, 15 FCC Rcd 23198 (2000).

[23] *See Carolina Liquidators, Inc.,* Notice of Apparent Liability for Forfeiture, 15 FCC Rcd 16,837, 16,842 (2000); *21st Century Fax(es) Ltd., a/k/a 20th Century Fax(es),* 15 FCC Rcd 24,406, 24,411 (2000).

[24] *See* Appendix for a listing of the consumer complaints against Presidential Who's Who requesting Commission action.

[25] *See e.g., Get-Away, Inc.* 15 FCC Rcd at 1812. *But see The Street Map Company,* Notice of Apparent Liability for Forfeiture, FCC 11-85 (June 1, 2011) ("*The Street Map NAL*")(implementing approach similar to that in the instant NAL, and imposing an upward adjustment for repeat violations); *Fax.com, Inc.,* Notice of Apparent Liability for Forfeiture, 17 FCC Rcd 15927 (2002) (applying an upward adjustment to the base forfeiture for each of 489 apparent junk fax violations for a total proposed forfeiture of $5,379,000).

[26] For example, we recently issued a forfeiture order against another entity, assessing a *total penalty of over $1.6 million,* imposed through *three different NALs,* and involving *nearly 300 violations* of our junk fax rules. *Mexico Marketing, LLC,* Forfeiture Order, FCC 11-48 (2011). The repeated nature of the apparent

(continued....)

5

12.    As a result, we believe that different and harsher penalties than those we have imposed in the past are now appropriate for entities who engage in a significant number of violations, such as Presidential Who's Who.[27]  With today's NAL, we have now taken *three enforcement actions*, involving a total of *more than one hundred violations*, against Presidential Who's Who for noncompliance with section 227 of the Act that Congress enacted and that we have implemented and are charged with enforcing.[28]  All of these apparent violations, except those that formed the basis for the original citation, occurred *after* the Bureau first warned Presidential Who's Who, via citation, that its conduct violated the law, and some apparent violations relate to conduct that occurred after the *September 2010 NAL*.  The penalty that we apply must take into account, in the language of section 503(b)(2)(E), this "degree of culpability" and "history of prior offenses,"[29] and in the language of the forfeiture guidelines, such "intentional misconduct" and "prior violations of … FCC requirements."[30]

13.    Accordingly, weighing the facts before us, including the fact that Presidential Who's Who has engaged in a significant number of violations after warnings by the Commission, we impose an upward adjustment of $150,000 for the unsolicited fax advertisements at issue here, for a total proposed forfeiture of $295,000.  ($145,000 + $150,000 = $295,000)  As a practical matter, this adjustment amounts to a penalty of approximately $9,500 for each of the apparent violations at issue in this NAL.[31]  The penalty we propose here is well within our statutory

---

(…continued from previous page)

violations in this case and those at issue in The *Street Map NAL* and *Mexico Marketing* persuade us that an upward adjustment is necessary to adequately deter entities from violating our junk fax prohibitions.  Our decision to impose an adjustment in today's NAL demonstrates our recognition of the greater power that Congress has given us, and that appears is necessary to be exercised in order to enforce Congress's prohibition against unsolicited fax ads.

[27] This is consistent with the action taken by the Commission with respect to The Street Map Company and Fax.com, Inc. where we imposed a harsher penalty for a significant number of violations.  *See Street Map NAL, supra* n. 25 and *Fax.com, Inc.*, 17 FCC Rcd at 15493.

[28] Section 504(c) of the Act, 47 U.S.C. § 504(c), prohibits the Commission from using the issuance of an NAL against a party in one proceeding to the prejudice of that party in another proceeding, until either the party pays the forfeiture or a court issues a final order that it do so.  However, this prohibition does not restrict the Commission from considering the *facts* that underlie prior NALs.  *Commission's Forfeiture Policy Statement & Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines,* Report & Order, 12 FCC Rcd 17087, 17102-17104 (1997).  Thus, consideration in the current NAL of Presidential Who's Who's past conduct that led to our earlier enforcement actions is fully consistent with section 504(c) of the Act.  *See Commission's Forfeiture Policy Statement & Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, Memorandum Opinion & Order, 15 FCC Rcd 303, 303-305 (1999).

[29] 47 U.S.C. § 503(b)(2)(E).

[30] 47 C.F.R. § 1.80 sec. II (Adjustment Criteria for Section 503 Forfeitures).

[31] The upward adjustment of $150,000 amounts to approximately $5,000 for each of 30 of the violations at issue in this NAL that are not already subject to upward adjustment (*i.e.*, all of the violations except the one for which we assess a $10,000 penalty).  The combination of the base forfeiture and the upward adjustment per violation for each of the 30 violations is therefore approximately $9,500, which is in the range of the $10,000 penalty we assess when a consumer has specifically requested a company not to send an unsolicited fax.  It is more than the approximate $6,000 per violation forfeiture we proposed in The Street Map NAL where the overall number of apparent junk fax violations was significantly less than the over one hundred violations in this case.  The upward adjustment we apply in the instant NAL and that in The Street Map NAL are proportionate to the difference in the number of violations at issue in each case.  We note,

(continued….)

discretion, because as indicated above, the Act permits us to impose a forfeiture of as much as $16,000 per violation, or a total of $496,000 for the 31 violations at issue in this NAL. Moreover, while in the past we generally have not adjusted upward the base forfeiture for junk faxes as a result of the number of violations at issue, doing so now is clearly within our discretion under the factors set forth in section 503(b)(2)(E) of the Act, and in fact consistent with our past approach of applying a harsher penalty to junk fax violations for a significant number of apparent violations.[32] We believe the upward adjustment and overall proposed penalty that we impose here against Presidential Who's Who is appropriate due to the number of apparent violations, and the fact that Presidential Who's Who apparently engaged in much of its misconduct deliberately, given its disregard for the Commission's previous warnings. Those who violate our junk fax rules are on notice that we intend to use the full range of our enforcement power to deter future noncompliance and protect consumers from annoyance and harms caused by such conduct, including assessing the statutory maximum forfeiture amount of $16,000 per violation.

## IV. CONCLUSION

14. We have determined that Presidential Who's Who apparently violated section 227(b)(1)(C) of the Act and section 64.1200(a)(3) of the Commission's rules, by using a telephone facsimile machine, computer, or other device to send 31 unsolicited advertisements to the 30 consumers identified in the Appendix. We have further determined that Presidential Who's Who is apparently liable for a forfeiture in the amount of $295,000.

## V. ORDERING CLAUSES

15. Accordingly, **IT IS ORDERED**, pursuant to section 503(b) of the Communications Act of 193, as amended, 47 U.S.C. § 503(b), and section 1.80 of the rules, 47 C.F.R. § 1.80, that Presidential Who's Who dba Presidential Who's Who, Inc. is hereby **NOTIFIED** of this **APPARENT LIABILITY FOR A FORFEITURE** in the amount of $295,000 for willful and repeated violations of section 227(b)(1)(C) of the Communications Act of 1934, as amended, 47 U.S.C. § 227(b)(1)(C), and section 64.1200(a)(3) of the Commission's rules, 47 C.F.R. § 64.1200(a)(3).

16. **IT IS FURTHER ORDERED THAT,** pursuant to section 1.80 of the Commission's rules,[33] within thirty (30) days of the release date of this *Notice of Apparent Liability for Forfeiture*, Presidential Who's Who dba Presidential Who's Who, Inc. **SHALL PAY** the full amount of the proposed forfeiture or **SHALL FILE** a written statement seeking reduction or cancellation of the proposed forfeiture.

17. Payment of the forfeiture must be made by check or similar instrument, payable to the order of the Federal Communications Commission. The payment must include the

---

(...continued from previous page)
however, that while the upward adjustment the Commission applies today in this case amounts to approximately $5,000 per violation, it is not the Commission's intent in every case to mechanically apply a $5,000 upward adjustment. We fully intend, as we did in this case and in The Street Map NAL, to apply an appropriate upward adjustment on a case-by-case bases taking into account our obligation under section 503(b)(2)(E) of the Act. In this respect, we may apply a higher forfeiture amount, including the $16,000 statutory maximum if the facts of a particular case warrant.

[32] *See supra* note 27.

[33] 47 C.F.R. § 1.80.

NAL/Account Number and FRN referenced above. Payment by check or money order may be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000. Payment by overnight mail may be sent to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101. Payment by wire transfer may be made to ABA Number 021030004, receiving bank TREAS/NYC, and account number 27000001. For payment by credit card, an FCC Form 159 (Remittance Advice) must be submitted. When completing the FCC Form 159, enter the NAL/Account number in block number 23A (call sign/other ID), and enter the letters "FORF" in block number 24A (payment type code). Presidential Who's Who dba Presidential Who's Who, Inc. shall also send electronic notification on the date said payment is made to Johnny.Drake@fcc.gov. Requests for full payment under an installment plan should be sent to: Chief Financial Officer -- Financial Operations, 445 12th Street, SW, Room 1-A625, Washington, D.C. 20554. Please contact the Financial Operations Group Help Desk at 1-877-480-3201 or Email: ARINQUIRIES@fcc.gov with any questions regarding payment procedures.

18.    The response, if any, must be mailed both to: Marlene H. Dortch, Secretary, Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554, ATTN: Enforcement Bureau – Telecommunications Consumers Division; and to Richard A. Hindman, Chief, Telecommunications Consumers Division, Enforcement Bureau, Federal Communications Commission, 445 12th Street, S.W., Washington, DC 20554, and must include the NAL/Acct. No. referenced in the caption. Documents sent by overnight mail (*other than* United States Postal Service Express Mail) must be addressed to: Marlene H. Dortch, Secretary, Federal Communications Commission, Office of the Secretary, 9300 East Hampton Drive, Capitol Heights, MD 20743. Hand or messenger-delivered mail should be directed, without envelopes, to Marlene H. Dortch, Secretary, Federal Communications Commission, Office of the Secretary, 445 12th Street, SW, Washington, DC 20554 (deliveries accepted Monday through Friday 8:00 a.m. to 7:00 p.m. only). See www.fcc.gov/osec/guidelines.html for further instructions on FCC filing addresses.

19.    The Commission will not consider reducing or canceling a forfeiture in response to a claim of inability to pay unless the petitioner submits: (1) federal tax returns for the most recent three-year period; (2) financial statements prepared according to generally accepted accounting practices; or (3) some other reliable and objective documentation that accurately reflects the petitioner's current financial status. Any claim of inability to pay must specifically identify the basis for the claim by reference to the financial documentation submitted.

20.    **IT IS FURTHER ORDERED** that a copy of this *Notice of Apparent Liability for a Forfeiture* shall be sent by Certified Mail Return Receipt Requested and First Class mail to Presidential Who's Who dba Presidential Who's Who, Inc., Attention: Frank Ciaccio, President, and Mark Anthony McGuinness, 134 Rockaway Avenue, Valley Stream, NY 11580.

FEDERAL COMMUNICATIONS COMMISSION

Marlene H. Dortch
Secretary

Federal Communications Commission                    FCC 11-95

## APPENDIX

### Complainants and Violation Dates

| Complainant received facsimile solicitations | Violation Date(s) |
|---|---|
| Adams, R. | 6/22/10 |
| Bernard, T. | 7/23/10 |
| Byron, F. | 9/10/10 |
| Buchicchio, K. | 9/21/10 |
| Cochran, R. | 9/21/10 |
| Dawdy, C. | 9/29/10 |
| Elkowitz, A. | 9/29/10 |
| Gallo, A. | 6/14/10 |
| Glick, L. | 9/13/10 |
| Gonzales, J. | 8/6/10 |
| Goodman, L. | 9/13/10 |
| Jacobs, M. | 6/29/10 |
| Kay, K. | 10/6/10 |
| Lester, R. | 6/16/10 |
| Leyman, L. | 9/7/10 |
| Marzane, D. | 6/29/10 |
| McKeown, C. | 8/11/10 |
| Meyers, J. | 9/13/10 |
| Neil, Sr., L. | 9/7/10 |
| Pitric, M. | 6/22/10 |
| Rothstein, M. | 10/20/10 |
| Schroeder, J. | 7/19/10, 9/21/10 |
| Shaw, L. | 6/14/10 |
| Smith, M. | 10/5/10 |
| Sparks, H. | 9/13/10 |
| Spivey, S. | 9/7/10 |
| Stern, L. | 8/6/10 |
| Wells, G. | 9/13/10 |
| Yi, M. | 9/29/10 |

| Complainant received facsimile solicitations after requesting no more be sent | Violation Date(s) |
|---|---|
| McDonald, A. | 8/3/10 |

9

# EXHIBIT F

| Federal Communications Commission | FCC 14-34 |
|---|---|

Before the
**Federal Communications Commission**
**Washington, D.C. 20554**

| In the Matter of | ) | File No.: EB-TCD-12-00000217[1] |
|---|---|---|
| | ) | |
| Presidential Who's Who, Inc. | ) | NAL/Acct. Nos.: 201132170023, |
| Presidential Who's Who | ) | 201032170005 |
| | ) | |
| | ) | FRN: 0020197919 |

**FORFEITURE ORDER**

Adopted: March 27, 2014                                      Released: March 28, 2014

By the Commission:

## I.  INTRODUCTION

1.       We impose a penalty of $640,000 against Presidential Who's Who, Inc., for faxing more than 100 advertisements to consumers who did not request them, did not want them, and had no established business relationship with the company.  Presidential Who's Who persisted in this conduct after Commission staff issued the company a formal citation, explained that its actions were unlawful, and warned that additional junk faxing could result in monetary forfeitures.  Given that Presidential Who's Who failed to heed this warning, the Commission proposed $640,000 in penalties through two prior Notices of Apparent Liability for Forfeiture of $345,000 and $295,000.  Since that time, Presidential Who's Who has not offered a satisfactory defense for its actions, or satisfactory support for its claim that it cannot pay the proposed penalties.  Due to the large number of violations at issue, the company's apparently intentional misconduct, and its failure to provide full and updated support for its inability to pay, we impose the total forfeiture of $640,000.

## II.  BACKGROUND

2.       Congress enacted the Telephone Consumer Protection Act of 1991 (TCPA) to address problems of abusive telemarketing, including junk faxes.[2]  Unsolicited faxes often impose unwanted burdens on the called party, including costs of paper and ink, and make fax machines unavailable for legitimate business messages.  Section 227(b)(1)(C) of the Act makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."[3]

---

[1] This case was formerly assigned the file number EB-08-TC-2507.  In January 2011, the Telecommunications Consumers Division assigned a new case number.

[2] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991) (*codified as amended at* 47 U.S.C. § 227).  *See also* Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005).

[3] 47 U.S.C. § 227(b)(1)(C).  The prohibition is subject to certain exceptions, such as (1) if the sender has an "established business relationship" (EBR) with the recipient, and (2) the sender obtained the facsimile number from the recipient through voluntary communication in the context of an EBR, or from a directory, advertisement, or website through which the recipient voluntarily and publicly provided its facsimile number.  In addition, the unsolicited ad must notify the recipient how to opt out of receiving future such ads, and do so in compliance with certain requirements.  The Commission has adopted implementing rules.  47 C.F.R. § 64.1200(a)(4).

Federal Communications Commission      FCC 14-34

3.      Pursuant to Section 503(b)(5) of the Act,[4] the Enforcement Bureau (Bureau) issued a citation to Presidential Who's Who[5] on June 18, 2008, in response to one or more consumer complaints alleging that Presidential Who's Who had faxed unsolicited advertisements.[6] The Bureau cited Presidential Who's Who for using a telephone facsimile machine, computer, or other device, to send an unsolicited advertisement for entry in and sale of the publication "Presidential Who's Who" to a telephone facsimile machine, in violation of Section 227(b)(1)(C) of the Act and Section 64.1200(a)(4) of the Commission's rules.[7] Mr. Frank Ciaccio, on behalf of Presidential Who's Who, requested an interview and claimed that the fax on which the citation was based was not an advertisement.[8] During the interview, staff informed Mr. Ciaccio that the fax in question was, in fact, an advertisement.[9]

4.      Subsequently, the Commission received numerous complaints alleging that Presidential Who's Who continued to engage in the same conduct, and thus continued to violate Section 227(b)(1)(C) of the Act and Section 64.1200(a)(4) of the Commission's rules. These violations, which occurred after the citation, led the Commission to issue two NALs against Presidential Who's Who pursuant to Section 503(b)(4) of the Act.[10]

5.      In the *September 2010 NAL*, the Commission proposed a forfeiture of $345,000 based on 69 consumer complaints alleging 73 violations of our junk fax rules.[11] The NAL gave Presidential Who's

---

[4] 47 U.S.C. § 503(b)(5).

[5] According to publicly available information, Presidential Who's Who, Inc. is also operating under the business name Presidential Who's Who. Lexis Business Reports Database available at www.lexis.com (last visited Mar. 19, 2014). Therefore, all references in this Order to "Presidential Who's Who, Inc." encompass Presidential Who's Who, Inc. as well as Presidential Who's Who. Presidential Who's Who, Inc. has had offices at 134 Rockaway Ave., Valley Stream, NY 11580, and 17 West Merrick Rd., Suite B, Valley Stream, NY 11580-5701. Frank Ciaccio is President and Chief Executive Officer, and Mark Anthony McGuiness is Chief Operating Officer. All references in this Order to Presidential Who's Who, Inc. also encompass the foregoing individuals, as well as the corporate entity itself.

[6] Citation from Kurt A. Schroeder, Deputy Chief, Telecommunications Consumers Division, FCC Enforcement Bureau, to Presidential Who's Who (June 18, 2008) (on file in EB-08-TC-2507).

[7] *Id.*

[8] Telephone interview conducted on July 11, 2008 between Mr. Frank Ciaccio, representing Presidential Who's Who, and Kurt Schroeder, Deputy Chief, Telecommunications Consumers Division, FCC Enforcement Bureau, and Mary Romano, Special Advisor, Telecommunications Consumers Division, FCC Enforcement Bureau.

[9] *Id.* Also, during this interview, Commission staff explained to Mr. Ciaccio that the fax in question was a pretext to an advertisement, and thus, a prohibited unsolicited advertisement pursuant to the Act and the Commission's rules. 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(14). Mr. Ciaccio subsequently claimed that the fax was sent in error. However, neither the TCPA nor the Commission's rules contain any exceptions for unsolicited fax advertisements sent in error. *See also September 2010 NAL,* 25 FCC Rcd 13759 at 13762, para. 7; *June 2011 NAL,* 26 FCC Rcd 8989 at 8991-92, para. 8 (discussing the faxes in question serving as pretexts to advertise commercial products). *See infra* paras. 9-10.

[10] *See Presidential Who's Who dba Presidential Who's Who, Inc.,* Notice of Apparent Liability for Forfeiture, 25 FCC Rcd 13759 (2010) (*September 2010 NAL*); and *Presidential Who's Who dba Presidential Who's Who, Inc.,* Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 8989 (2011) (*June 2011 NAL*).

[11] On November 10, 2010, Mr. Ciaccio sent a letter to the Commission claiming that he had not received the *September 2010 NAL. See* Letter from Frank Ciaccio, Presidential Who's Who, to Marlene H. Dortch, Secretary, Federal Communications Commission (Nov. 10, 2010) (on file in EB-08-TC-2507). On December 20, 2010, the Commission redirected a copy of the *September 2010 NAL* (and associated complaints) to the new address provided by the company via United States Postal Service and by e-mail. *See* Letter from Rosemary Cabral, Staff Attorney, Telecommunications Consumers Division, FCC Enforcement Bureau, to Frank Ciaccio, Presidential Who's Who (Dec. 20, 2010) (on file in EB-08-TC-2507). *See also* E-Mail from Rosemary Cabral, Staff Attorney, Telecommunications Consumers Division, FCC Enforcement Bureau, to Frank Ciaccio, Presidential Who's Who

Who an opportunity to file a written response seeking to reduce or cancel the proposed forfeiture.[12] In early January, Mr. Ciaccio requested an extension of time to respond to the NAL.[13] On January 26, 2011, Mr. Ciaccio submitted a response identifying the websites from which Presidential Who's Who claims it obtained the fax numbers associated with the consumers who filed complaints against the company. Mr. Ciaccio stated that, "[a]s we understand the law, these numbers were obtained legally and not a single one of the fax numbers in question had a *do not solicit* notification attached to it."[14] Although Bureau staff asked Mr. Ciaccio to submit further information to show how the numbers were obtained "legally," he declined to do so.[15]

6.      In the *June 2011 NAL*, the Commission proposed a forfeiture of $295,000.[16] In response to the *June 2011 NAL*, on August 12, 2011, Mr. Ciaccio requested a meeting via teleconference with Commission staff.[17] On August 17, 2011, staff conducted the meeting during which Mr. Ciaccio admitted sending the faxes, but argued that the faxes were legal because, in his view, the Commission had not warned him that the faxes violated the Act and/or the Commission's rules.[18] Additionally, Mr. Ciaccio indicated that the company was unable to pay the proposed forfeiture amounts, and subsequently submitted some tax documentation in support.[19]

(Continued from previous page) ————————————
(Dec. 20, 2010, 3:38 p.m. E.D.T.) (E-mail forwarded *September 2010 NAL*). Commission staff subsequently received an e-mail from Mr. Ciaccio confirming receipt. *See* E-Mail from Frank Ciaccio, Presidential Who's Who, to Rosemary Cabral, Staff Attorney, Telecommunications Consumers Division, FCC Enforcement Bureau (Jan. 3, 2011, 11:08 a.m. E.D.T.).

[12] *September 2010 NAL,* 25 FCC Rcd at 13763.

[13] Mr. Ciaccio made his request for an extension via telephone to Rosemary Cabral, Staff Attorney, Telecommunications Consumers Division, FCC Enforcement Bureau, and followed up via e-mail. Mr. Ciaccio stated that additional time was required due to illness. *See* E-mail from Frank Ciaccio, Presidential Who's Who, to Rosemary Cabral, Staff Attorney, Telecommunications Consumers Division, FCC Enforcement Bureau (Jan. 20, 2011, 3:07 p.m. E.D.T.).

[14] *See* Letter from Frank Ciaccio, Presidential Who's Who, to Rosemary Cabral, Staff Attorney, Telecommunications Consumers Division, FCC Enforcement Bureau, at 1 (filed Jan. 26, 2011) (on file in EB-08-TC-2507) (*PWW's NAL Response*); *see also* E-mail from Frank Ciaccio, Presidential Who's Who, to Rosemary Cabral, Staff Attorney, Telecommunications Consumers Division, FCC Enforcement Bureau (Feb. 3, 2011, 4:10 p.m. EDT) (including an electronic copy of *PWW'S NAL Response*). *See infra* para. 8.

[15] Commission staff requested by both telephone and e-mail that Presidential Who's Who submit additional information to support its response. *See* E-Mail from Rosemary Cabral, Staff Attorney, Telecommunications Consumers Division, FCC Enforcement Bureau, to Frank Ciaccio, Presidential Who's Who (Feb. 7, 2011, 2:05 p.m. E.D.T.) (e-mail following conversation requesting additional information in support of January 26, 2011 letter from Presidential Who's Who).

[16] *See supra* note 10. Presidential Who's Who acknowledged receipt of the NAL, as evidenced by a signed United States Postal Service return receipt, Article Number 7008 1140 0000 8055 9798 (dated June 16, 2011).

[17] *See* E-mail from Frank Ciaccio, Presidential Who's Who, to Rosemary Cabral, Staff Attorney, Telecommunications Consumers Division, FCC Enforcement Bureau (Aug. 12, 2011, 11:07 a.m. EDT).

[18] Telephone interview conducted on August 17, 2011 between Mr. Ciaccio, Presidential Who's Who, Richard A. Hindman, Chief, Consumers Telecommunications Consumers Division, FCC Enforcement Bureau, and Rosemary Cabral, Staff Attorney, Telecommunications Consumers Division, FCC Enforcement Bureau. Although Mr. Ciaccio claimed that he had not been warned that such activity was unlawful, Commission staff reminded Mr. Ciaccio that Commission staff had previously informed him—in both the interview after the citation was issued in July 2008, and then again in the *September 2010 NAL*—that the subject matter of the Presidential Who's Who faxes constituted an advertisement prohibited under the Act and the Commission's rules. *See supra* notes 9, 11; *see also September 2010 NAL,* 25 FCC Rcd at 13759.

[19] *See* Facsimile from Frank Ciaccio, Presidential Who's Who, to Rosemary Cabral, Staff Attorney, Telecommunications Consumers Division, FCC Enforcement Bureau (October 24, 2011, 9:56 a.m. EDT).

## III.    DISCUSSION

7.      Section 503(b)(2)(D) authorizes the Commission to assess a maximum forfeiture of $16,000 per violation against an entity such as Presidential Who's Who.[20]  In exercising such authority, the Commission must consider "the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require."[21]  As discussed above, the Commission issued two separate NALs to Presidential Who's Who and proposed a total forfeiture of $640,000.

8.      In its responses to the two NALs, Presidential Who's Who raises three arguments.  First, Presidential Who's Who claims that it did not have sufficient notice that the faxes it sent qualified as unsolicited facsimile advertisements.[22]  Second, the company contends it "legally" obtained the numbers to which it directed the faxes from websites, such that it was authorized to send the faxes to the fax recipients.[23]  Finally, the company asserts that it cannot afford to pay the forfeitures proposed against the company in both the *September 2010 NAL* and *June 2011 NAL*.[24]

9.      *Legal Status of Faxes and Notice.*  As the Bureau did in its citation and the Commission did in both of its NALs, we conclude that the facsimiles that Presidential Who's Who sent to consumers constitute unsolicited facsimile advertisements, and we find that Presidential Who's Who had notice of that fact.  The faxes at issue offer entry in the publication "Presidential Who's Who" and advertise that publication either explicitly or in conjunction with follow-up telephone calls from Presidential Who's Who.  At best, the faxes serve as part of an "overall marketing campaign to sell property, goods, or services"; thus, for purposes of the junk fax rules, they are unsolicited facsimile advertisements.[25]

10.     Presidential Who's Who had ample notice that its faxes constituted unsolicited facsimile advertisements.  For one, the citation the Bureau issued provided sufficient notice of the law and the fact that the faxes sent by Presidential Who's Who violated the junk-fax rules.  For another, in the interview between Mr. Ciaccio and Bureau staff that followed the company's challenge to the Bureau's citation, staff explained the law:  the faxes are "pretexts" to an advertisement and are thus prohibited under the Act and the Commission's rules.[26]  Even without such warnings, ignorance of the law "does not exonerate, excuse, or mitigate violations."[27]  Notwithstanding the notice and warnings, Presidential Who's Who

---

[20] 47 U.S.C. § 503(b)(2)(D).  Section 503(b)(2)(D) provides for forfeitures of up to $10,000 for each violation in cases where the violation does not involve Commission licensees or common carriers, among others.  *See* 47 U.S.C. § 503(b)(2)(C).  In accordance with the inflation adjustment requirements contained in the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, Sec. 31001, 110 Stat. 1321, the Commission increased the maximum statutory forfeiture under Section 503(b)(2)(C) to $16,000.  *See* 47 C.F.R. §1.80(b)(7).  *See also Amendment of Section 1.80(b) of the Commission's Rules, Adjustment of Forfeiture Maxima to Reflect Inflation*, 23 FCC Rcd 9845 (2008) (amendment of section 1.80(b) to reflect an increase in the maximum forfeiture for this type of violation to $16,000).

[21] 47 U.S.C. § 503(b)(2)(E).

[22] *See supra* note 18.

[23] *See supra* note 14.

[24] *See supra* note 19.  During the August 17, 2011 interview, Mr. Ciaccio indicated that the company was unable to pay the proposed forfeiture amounts.

[25] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act*, Report & Order & Third Order on Reconsideration, 21 FCC Rcd 3787 at 3814 (2006) (*Junk Fax Prevention Act R&O*).

[26] *See supra* note 9.

[27] *Start Wireless Group, Inc. D/B/A Page Plus Cellular*, 27 FCC Rcd 350, 354 (Enf. Bur. 2012) (although violator claimed that it was "completely unaware" of its obligation to comply with the rules, ignorance of the Act or the Commission's rules does not exonerate, excuse, or mitigate violations).  Longstanding Commission precedent

continued to fax unsolicited advertisements at least *seventy-three* more times over the next several months, which resulted in the *September 2010 NAL*. Although Presidential Who's Who was again notified of its unlawful conduct with that NAL, the company continued to engage in unlawful conduct by sending at least *thirty-one* additional unsolicited advertisements, which resulted in the *June 2011 NAL*. Accordingly, we conclude that the company had notice that its activities were unlawful.

11.     *"Legally" Obtained Fax Numbers.* Pursuant to both the Act and the Commission's rules, a fax sender must have an EBR with the recipient to send an unsolicited advertisement via facsimile.[28] Presidential Who's Who maintains that it obtained the fax numbers from public websites. Yet, "[t]he fact that a facsimile number was made available in a directory, advertisement or website does not alone entitle a person to send a facsimile advertisement to that number."[29] Presidential Who's Who never claimed to have an EBR with the fax recipients who filed complaints, nor did it ever demonstrate that these recipients gave their permission to receive fax transmissions.  Accordingly, we find that Presidential Who's Who's claim that it obtained the fax numbers legally is irrelevant to the question of whether it violated the TCPA.

12.     *Inability to Pay.* We decline to reduce the forfeiture proposed against Presidential Who's Who based on its claimed inability to pay the full amount of the forfeiture. The Commission generally considers a company's gross revenues to be the best indicator of a company's ability to pay a forfeiture.[30] Parties must support a claim of inability to pay with federal tax returns for the most recent three-year period and/or some other reliable and objective documentation that accurately reflects the party's current financial status.[31]

13.     Presidential Who's Who originally produced tax returns to try to support its claim, but it has failed to provide more current and updated information, notwithstanding the Bureau's request that it do so. In November 2011, Presidential Who's Who produced its 2008, 2009, and 2010 tax returns. A year later, in November 2012, Bureau staff communicated with Mr. Ciaccio about potential settlement, and at that time he claimed that Presidential Who's Who had gone out of business shortly after submitting its tax returns to the Bureau in 2011. Staff asked Mr. Ciaccio to provide evidence of the change in the operating status of Presidential Who's Who, as well as updated financial information. Mr. Ciaccio appeared poised to provide these materials, asking for (and receiving) an extension of the staff's original deadline for submission, but that date came and went without Mr. Ciaccio submitting any of the requested materials. Staff has since attempted to communicate with him about his failure to provide the information needed to assess his claims and the current financial wherewithal of the company, but these efforts have been unsuccessful. Moreover, New York State records indicate that "Presidential Who's Who Inc." is an

---

(Continued from previous page) ————————————
supports the proposition that ignorance of the law is not a defense or mitigating circumstance. *See Dynasty Mortgage, LLC*, 20 FCC Rcd 4921, 4929 (2005) (citing *Southern California Broadcasting Co.*, 6 FCC Rcd 4387, 4388 (1991), *recon. denied*, 7 FCC Rcd 3454 (1992)).

[28] 47 C.F.R. § 64.1200(a)(4)(i).  An EBR is an established business relationship. *See supra* note 3; 47 C.F.R. § 64.1200(f)(6).

[29] *Junk Fax Prevention Act R&O*, 21 FCC Rcd at 3797.

[30] *See, e.g., Alpha Ambulance, Inc,*. 19 FCC Rcd 2547, 2548-49 ¶ 5 (2004); *Long Distance Direct, Inc.* 15 FCC Rcd 3297, 3305 (2000); *PJB Communications of Virginia, Inc.*, 7 FCC Rcd 2088, 2089 ¶ 8 (1992); *see also Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines, Report and Order*, 12 FCC Rcd 17087, 17106-07 ¶ 43 (1997).

[31] *See, e.g., June 2011 NAL*, 26 FCC Rcd at 8996.

active corporation,[32] and other information suggests an upswing in the financial situation of Presidential Who's Who in 2012.[33]

14.     Even if Presidential Who's Who had provided updated financial information to support its claimed inability to pay, such evidence must be weighed against the nature of its misconduct.  As indicated, "ability to pay" is but one factor the Commission must consider in determining the amount of any forfeiture penalty; the Commission must also consider "the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, . . . and such other matters as justice may require."[34]  Our forfeiture guidelines indicate that we may adjust forfeitures upward when certain aggravating factors are present, such as when egregious misconduct or substantial harm is involved, or when the violator has intentionally, continuously, or repeatedly violated the law.  Applying these factors here, the evidence shows that Presidential Who's Who continuously and repeatedly violated the junk fax prohibition, as indicated by approximately 100 complaints.  The evidence also shows that the company appears to have done so intentionally, given its repeated violations after receiving warning that its conduct was unlawful.

15.     Weighing the factors enumerated in the Act and our forfeiture guidelines, we find that Presidential Who's Who has not produced sufficient current financial information to support its claimed inability to pay the forfeiture proposed against it, and that its conduct appears to have been continuous, repeated, and intentional.  Accordingly, we decline to reduce the forfeiture proposed against Presidential Who's Who.

## IV.     CONCLUSION

16.     We affirm our findings in the previous NALs against Presidential Who's Who, and we find no reason to adjust the forfeitures proposed in those NALs.  We therefore impose a forfeiture of $640,000 against Presidential Who's Who for willful and repeated violations of Section 227(b)(1)(C) of the Act and Section 64.1200(a)(4) of the Commission's rules.

## V.     ORDERING CLAUSES

17.     Accordingly, **IT IS ORDERED** that, pursuant to Section 503(b) of the Communications Act of 1934, as amended, 47 U.S.C. § 503(b), and Section 1.80(f)(4) of the Commission's rules, 47 C.F.R. § 1.80(f)(4), Presidential Who's Who **IS LIABLE FOR A MONETARY FORFEITURE** to the United States Government in the sum of $640,000 for willfully and repeatedly violating Section 227(b)(1)(C) of the Communications Act, 47 U.S.C. § 227(b)(1)(C), and Section 64.1200(a)(4) of the Commission's rules, 47 C.F.R. § 64.1200(a)(4).

18.     Payment of the forfeiture shall be made in the manner provided for in Section 1.80 of the Rules within thirty (30) calendar days after the release date of this Forfeiture Order.[35]  If the forfeiture is not paid within the period specified, the case may be referred to the U.S. Department of Justice for enforcement of the forfeiture pursuant to Section 504(a) of the Act.[36]  Presidential Who's Who shall send electronic notification of payment to Johnny Drake at Johnny.Drake@fcc.gov, Rosemary Cabral at Rosemary.Cabral@fcc.gov, and Phillip Priesman at Phillip.Priesman@fcc.gov on the date said payment is made.

---

[32] Westlaw Corporate Records & Business Registrations database, 2014 Westlaw Record ID 3496939, *available at* http://www.westlaw.com (last visited Mar. 19, 2014).

[33] Westlaw Business Profile Record, *available at* http://www.westlaw.com (last visited Mar. 19, 2014), Westlaw Business Profile reports sales of more than $6 million in 2012 for Presidential Who's Who's Merrick Road address.

[34] 47 U.S.C. § 503(b)(2)(E).

[35] 47 C.F.R. § 1.80.

[36] 47 U.S.C. § 504(a).

19.    The payment must be made by check or similar instrument, wire transfer, or credit card, and must include the NAL/Account number and FRN referenced above.  Regardless of the form of payment, a completed FCC Form 159 (Remittance Advice) must be submitted.[37]  When completing the FCC Form 159, enter the Account Number in block number 23A (call sign/other ID) and enter the letters "FORF" in block number 24A (payment type code).  Below are additional instructions Presidential Who's Who should follow based on the form of payment it selects:

- Payment by check or money order must be made payable to the order of the Federal Communications Commission.  Such payments (along with the completed Form 159) must be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

- Payment by wire transfer must be made to ABA Number 021030004, receiving bank TREAS/NYC, and Account Number 27000001.  To complete the wire transfer and ensure appropriate crediting of the wired funds, a completed Form 159 must be faxed to U.S. Bank at (314) 418-4232 on the same business day the wire transfer is initiated.

- Payment by credit card must be made by providing the required credit card information on FCC Form 159 and signing and dating the Form 159 to authorize the credit card payment.  The completed Form 159 must then be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

20.    Any request for full payment under an installment plan should be sent to:  Chief Financial Officer—Financial Operations, Federal Communications Commission, 445 12th Street, S.W., Room 1-A625, Washington, D.C.  20554.[38]  If Presidential Who's Who has questions regarding payment procedures, it should contact the Financial Operations Group Help Desk by phone, 1-877-480-3201, or by e-mail, ARINQUIRIES@fcc.gov.

21.    **IT IS FURTHER ORDERED** that a copy of the Forfeiture Order shall be sent by mail and certified mail return receipt requested to Presidential Who's Who, Inc., Attention: Frank Ciaccio, President and Chief Executive Officer, and Mark Anthony McGuinness, Chief Operating Officer, 134 Rockaway Avenue, Valley Stream, NY 11580.

FEDERAL COMMUNICATIONS COMMISSION


Marlene H. Dortch
Secretary

---

[37] FCC Form 159 and detailed instructions for completing the form may be obtained at http://www.fcc.gov/Forms/Form159/159.pdf.

[38] *See* 47 C.F.R. § 1.1914.

# EXHIBIT G

10/24/2011

To Rosemary Cabral:

In regards to my response for the inability to pay. This is the last document that I was waiting for from the IRS to show you my inability to pay the FCC fine. As you can see from the date of the document, I had just recently received it. I will gather all remaining documentation and have it all sent in to you by Friday Oct 28th. Please e-mail me the instructions on how to send all future correspondence in a timely manner. Also according to my assistant, we did not previously send you anything because we were waiting for the IRS to send us the amended taxes owed. Once again please excuse my lateness in the matter. Thank you for your cooperation.

Frank Ciaccio

# EXHIBIT H

## Rosemary Cabral

| | |
|---|---|
| **From:** | Steve Maguire |
| **Sent:** | Wednesday, July 16, 2014 7:52 AM |
| **To:** | Rosemary Cabral; William Davenport; Mike Moffitt |
| **Subject:** | UPDATE: Reference: Presidential Who's Who, Inc., EB-TCD-12-00000217 |

Good morning.

Frank Ciaccio received the hand delivered NAL from Luis Roman at his residence without incident. Regards, Steve

**From:** Rosemary Cabral
**Sent:** Monday, July 14, 2014 12:38 PM
**To:** Steve Maguire; Luis Roman
**Cc:** William Davenport; Mike Moffitt
**Subject:** RE: Reference: Presidential Who's Who, Inc., EB-TCD-12-00000217

Steve and Luis,

Thank you so much for your help in this case.

-*Rosemary*
Rosemary Cabral | Attorney | Telecommunications Consumers Division | Enforcement Bureau | (202) 418-0662 |
Rosemary.Cabral@FCC.GOV

*** Non-Public: For Internal Use Only ***

**From:** Steve Maguire
**Sent:** Monday, July 14, 2014 12:34 PM
**To:** William Davenport; Rosemary Cabral; Mike Moffitt
**Cc:** Luis Roman
**Subject:** Reference: Presidential Who's Who, Inc., EB-TCD-12-00000217

**Bill, Rosemary, Mike:**

**Good afternoon!**

**Luis Roman is going to serve the paperwork at 1 Pirates Cove, Massapequa, L.I. tomorrow.  The local
precinct in Nassau County, Long Island is precinct is going to send a Patrolman to go with Luis.**

**Regards,**
**Steve**

**From:** Rosemary Cabral
**Sent:** Tuesday, June 03, 2014 3:44 PM
**To:** William Davenport
**Subject:** Presidential Who's Who, Inc., EB-TCD-12-00000217

Hi Bill,

1

A couple of years ago, you helped me arrange for field work on a case (NAL issued to Teresa Goldberg aka Tammy Pocknett, Software Training Company) -- and now similarly, we're in need of a field agent to personally serve an order on a party. Yesterday, the last of outstanding mailings in our Presidential Who's Who, Inc. (PWW) case was returned to us. We released a forfeiture order against PWW for delivering 104 junk faxes (on March 28th), and found the company liable for a forfeiture in the amount of $640,000. Copies of the forfeiture order were mailed via certified and regular mail, and envelopes have now all been returned marked "Return to Sender; Unable to forward."
The addresses involved are as follows:

Frank Ciaccio, President and Chief Executive Officer
Mark Anthony McGuinness, Chief Operating Officer
134 Rockaway Ave,
Valley Stream, NY 11580
and
17 W. Merrick Rd.
Suite B
Valley Steam, NY 11580

I'm hoping you might be able to help me, or direct me to whom I should contact in the NY field office. Please let me know if there is additional information you might need from me.

This is a time-sensitive matter as the DOJ collection deadline is 9/13/14.

Thanks,
-*Rosemary*
Rosemary Cabral | Attorney | Telecommunications Consumers Division | Enforcement Bureau | (202) 418-0662
| Rosemary.Cabral@FCC.GOV

*** Non-Public: For Internal Use Only ***

2

## Rosemary Cabral

| | |
|---|---|
| **From:** | Steve Maguire |
| **Sent:** | Wednesday, July 16, 2014 8:35 AM |
| **To:** | Rosemary Cabral |
| **Subject:** | Fw: Re: Presidential Who's Who, Inc. - Process of Service (EB-TCD-12-00000217) |
| **Attachments:** | Proof of Service Page signed.doc |

Rosemary-FYI.

**From:** Luis Roman
**Sent:** Wednesday, July 16, 2014 08:16 AM
**To:** Steve Maguire
**Subject:** RE: Re: Presidential Who's Who, Inc. - Process of Service (EB-TCD-12-00000217)

Hi Stephen

I met with the Officer Anthony Gawrych (shield 2831) from NCPD around 6:35 in Massapequa, NY then we went together to the address 1 Pirates Cove Massapequa, NY 11758.
I gave the letter in person to Frank Ciaccio at around 6:50p.m.

Thanks,

Luis

**From:** Steve Maguire
**Sent:** Monday, July 14, 2014 10:58 AM
**To:** Luis Roman
**Subject:** FW: Re: Presidential Who's Who, Inc. - Process of Service (EB-TCD-12-00000217)

Please call the 7th Precinct: 516-573-6700. Identify yourself and you are requesting assistance to serve Frank Ciaccio-- at the address you have on the envelope.

Thanks so much for doing this.

Regards,
Steve

1



# United States of America
## Federal Communications Commission
445 12th Street, S.W.
Washington, D.C. 20554

## Proof of Service

☒ Served:

Date: Tuesday, July 15th, 2014

Time: 6:50 p.m.

Place: 1 Pirates Cove, Massapequa, NY 11758

Manner of Service:

☐ E-Mail
☐ Facsimile
☐ Mail
☒ Hand-Delivery
☐ Other Method (Describe)_____

---

☐ Unserved

Reasons for failure to make service: _____

_____

---

I am a: ☐ U.S. Marshal          ☐ U.S. Deputy Marshal          ☒ Local NCPD Officer

Anthony Gawrych                                    shield # 2831
Printed Name                                        Signature

---

I am a: ☒ Federal Communications Commission Employee

☐ person 18 years of age or older who is not a party to and has no interest in this case

and present this Proof of Service under the penalty of perjury.

Luis Román                                          Signature
Printed Name

# EXHIBIT I

**FEDERAL COMMUNICATIONS COMMISSION**
**WASHINGTON, D.C.**

### CERTIFICATE OF FORFEITURE

**Violator(s) Name(s) and**
**Address(es):**

Presidential Who's Who, Inc.
134 Rockaway Avenue
Valley Stream, New York 11580

**Total forfeiture assessed by FCC as of** July 29, 2014 **in the amount of** $640,000.00.
I certify that Federal Communications Commission records show that the violator named above
has been ordered to pay to the United States the amount stated above.

This claim arose in connection with:

Notice of Apparent Liability For Forfeiture released September 13, 2010
Notice of Apparent Liability For Forfeiture released June 13, 2011
Forfeiture Order released March 28, 2014

**CERTIFICATION:** Pursuant to 28 USC § 1746, I certify under penalty of perjury that the
foregoing is true and correct.

8/20/2014
(Date)

Susan L. Launer
Deputy Associate General Counsel